STATE of Missouri, Respondent,

v.

Mark KILMARTIN, Appellant.

Mark KILMARTIN, Appellant,

v.

STATE of Missouri, Respondent.

Docket Nos. WD 47244, WD 49202.

Missouri Court of Appeals,
Western District.

June 13, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SPINDEN, Presiding Judge.

Mark R. Kilmartin complains in this appeal of his sodomy conviction and life sentence that the state did not present sufficient evidence to support the jury's verdict. We conclude that the state presented sufficient evidence to support the facts hypothesized in the verdict-directing instruction. This case, however, raises a troubling problem of which Kilmartin does not complain: The verdict-directing instruction varies significantly from the charge set out in the information. Kilmartin did not preserve the issue at trial. Although the matter captures our attention for plain error review, we do not grant Kilmartin relief because the variance did not result in manifest injustice.

Kilmartin does complain, in addition, that the trial court wrongly permitted the state to present evidence of pornography found in his house and his prior child molestation charges in another state. He also challenges the denial of his Rule 29.15 motion for postconviction relief. He argues that he established at a hearing on the motion that he was deprived of his constitutional rights to participate in individual *voir dire* proceedings following general *voir dire* and to have effective assistance of trial counsel. We affirm the judgments of conviction and denial of his Rule 29.15 motion.

## Sufficiency of Evidence and Variance of Verdict–Directing Instruction and Information

A grand jury indicted Kilmartin on May 15, 1991, of seven counts of sodomy in violation of § 566.060.[1] On August 28, 1992, the state substituted an information for the indictment. The state submitted three counts to the jury which convicted Kilmartin of only one count.

In the count on which the jury convicted Kilmartin, the indictment accused him of having, on March 17, 1991, "deviate sexual intercourse with [M.J.S.], to whom [Kilmartin] was not married and who was then less than fourteen years old, without the consent of [M.J.S.] by the use of forcible compulsion." This allegation tracked § 566.060.1 which said, "A person commits the crime of sodomy if he has deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion."

In the substituted information, the state charged Kilmartin with having, on March 17, 1991, "deviate sexual intercourse with [M.J.S.], to whom [Kilmartin] was not married and who was then less than fourteen years old, without the consent of [M.J.S.]" That charge tracked § 566.060.3 which said, "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." The information, however, added the element "without ... consent" contrary to the statute.

At trial, the court instructed the jury:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 17, 1991, in the County of Clay, State of Missouri, [Kilmartin] placed his hand on the penis of [M.J.S.], and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that [Kilmartin] did so without the consent of [M.J.S.] by the use of forcible compulsion, and

Fourth, that [Kilmartin] knew he was engaging in the conduct described in paragraph First without the consent of [M.J.S.] by forcible compulsion,

then you will find [Kilmartin] guilty under Count I of forcible sodomy.

---

1. All references to statutes are to the 1990 cumulative supplement of the Revised Statutes of Missouri unless otherwise indicated.

Kilmartin does not complain about the instruction's variance from the information. His complaint is that the state did not present sufficient evidence from which the jury could have found "forcible compulsion." We will first address his complaint and then turn to the variance issue.

The instruction defined "forcible compulsion" according to § 556.061(12)(a): "[p]hysical force that overcomes reasonable resistance[.]" Kilmartin contends:

> [T]here was no evidence of any actual physical force used against [M.J.S]. In fact, [Kilmartin] expressly repudiated any intention of using force against [M.J.S]. A mere statement that force *could* be used does not constitute "physical force that overcomes reasonable resistance", as required by Section 556.061(12) to establish "forcible compulsion."

Kilmartin asserts that because the state did not establish forcible compulsion, the trial court erred in (1) overruling his motions for judgment of acquittal at the close of the state's evidence and at the close of all of the evidence; (2) submitting the count to the jury; (3) accepting the jury's verdict of guilty on the count; and (4) sentencing Kilmartin to life in prison on the count.

The incident for which Kilmartin was charged occurred while Kilmartin was alone in his house with 11–year–old M.J.S. lifting weights. M.J.S. had met Kilmartin at a skating rink where Kilmartin was a "disc jockey" and "floor guard." Kilmartin, who was 30–years–old at the time of trial, fostered a friendship with M.J.S. by taking him to movies, letting him into the skating rink without paying, letting him use speed skates without charging him, buying him food, and having him spend the night at his house once or twice when other boys M.J.S.' age were there. M.J.S. considered Kilmartin to be his friend.

On Sunday evening, on March 17, 1991, Kilmartin called M.J.S. and asked whether he wanted to go skating. M.J.S. agreed. His parents were napping, so he did not ask their permission, but they had forbidden his returning to Kilmartin's house. M.J.S.

walked down the street from his house and waited for Kilmartin to pick him up. When Kilmartin arrived, he told M.J.S. that he was hungry and suggested going to a shopping mall to get food. The mall was closed when they arrived. Although the skating rink was still open, Kilmartin suggested going to his house to learn karate instead of skating.

Alone at Kilmartin's house, Kilmartin showed M.J.S. some karate moves, and they later began lifting weights. As they worked with the weights, Kilmartin asked M.J.S. whether he wanted "a penis massage." M.J.S. answered, "No." He later asked again, and M.J.S. again said no. Kilmartin moved behind M.J.S. as M.J.S. sat on a weight bench. Kilmartin grabbed him [2] and, while holding M.J.S., said, "I could force you, but I'm not that kind of guy." This frightened M.J.S., but Kilmartin asked again once or twice. Kilmartin asked still again, and M.J.S. finally relented.

Kilmartin told him to go to the bedroom and to lie on the bed. As M.J.S. laid on the bed, Kilmartin stood beside it and told the boy to pull down his pants. M.J.S. did not comply until Kilmartin told him a second time. M.J.S. was still frightened when he pulled down his pants and closed his eyes. Kilmartin massaged M.J.S.'s penis for 20 to 30 seconds.

M.J.S.' mother interrupted the episode by driving her car into Kilmartin's driveway. When he heard the car, Kilmartin stopped. He and M.J.S. went out to the car. M.J.S. got in and left with his mother. His mother said nothing to Kilmartin.

M.J.S.' parents were angry that he had gone to Kilmartin's house. M.J.S. did not volunteer any information about the incident until, back home, M.J.S.' father asked him what had happened. M.J.S. told him of Kilmartin's "penis massage," and his father called the police.

 This was sufficient for the jury to find physical force which would overcome reasonable resistance. Kilmartin acknowledges that M.J.S. testified that he was

---

2. The record does not indicate how Kilmartin grabbed M.J.S. The clear implication is that he grabbed M.J.S.' crotch, but the record is not specific.

"scared," but argues that Kilmartin did not exert "actual physical force." He is wrong.

"Physical force" is "[f]orce applied to the body[.]" BLACK'S LAW DICTIONARY 1147 (6th ed. 1990). Kilmartin's holding M.J.S. and grabbing him was force applied to M.J.S.' body.

The totality of the circumstances determines whether this was physical force which would overcome reasonable resistance. Reasonableness is that which is "suitable under the circumstances." BLACK'S at 1265. Such circumstances in this context would include the ages of the victim and the accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination and control over the victim; and whether the victim was under duress. "[T]he law does not require or expect the utmost resistance to sexual assault when it appears that such resistance would be futile or would provoke more serious injury." *State v. R--- D--- G---*, 733 S.W.2d 824, 827 (Mo.App.1987).

Under the circumstances of this case, Kilmartin's physical force was sufficient to overcome an 11–year–old boy's reasonable resistance. Kilmartin, while exerting his physical force, threatened further force in no uncertain terms. He repeatedly asked for M.J.S.' consent, to the point that coupled with the threat, it became demanding. They were alone in Kilmartin's house where Kilmartin controlled and dominated and where M.J.S. would likely feel trapped. Although he put the boy under duress by frightening him, he persisted until M.J.S. succumbed.

Kilmartin did not use a weapon or twist M.J.S.' arm, but he exerted force which was every bit as overpowering as a gun. Kilmartin reinforced his physical force—grabbing the boy and holding him—with many psychological factors intended to instill fear and wear down the boy's resistance. Kilmartin calculatedly increased his pressure on the boy: first coaxing him with favors and requests before resorting to threats and physical force. It became apparent to M.J.S. that resistance would be unsuccessful, and he suc-

cumbed to Kilmartin's overwhelming tactics. Kilmartin intended his physical force to subdue any notion of resistance. Although this case is near the outer limits as to what constitutes forcible compulsion, we conclude that the jury's verdict was reasonable and supported by sufficient evidence. No one looking at this situation with any amount of objectivity could conclude, as Kilmartin asserts, that M.J.S.' consented.

Kilmartin cites us to *State v. Daleske*, 866 S.W.2d 476, 478 (Mo.App.1993), in which the court suggested in *dicta* that a perpetrator's using his hands to guide a girl's mouth to his penis was not physical force. The state in that case, however, had not submitted the definition in § 556.061(12)(a), used in this case, but had used the alternative definition in § 566.061(12)(b).[3] Because the *Daleske* court's holding did not concern § 556.061(12)(a), it made its suggestion in passing and did not consider whether the totality of the circumstances would render the force exerted to be sufficient. We do not find any guidance in *Daleske*.

The more obvious problem which Kilmartin ignores is the instruction's variance from the information. The information accused Kilmartin of having deviate sexual intercourse with a person under the age of 14 to whom he was not married. The instruction hypothesized that Kilmartin had deviate sexual intercourse by means of forcible compulsion. It did not hypothesize M.J.S.' age or marital status.

Kilmartin makes no issue of the variance. He did not challenge the instruction on this ground at any point. At the instruction conference, Kilmartin objected to the verdict-directing instruction, but on the ground he raises in this appeal: that the state had not made a submissible case. We might overlook the issue but for the obvious nature of the error. An instruction's failure to hypothesize all of a crime's elements is certainly error. *State v. Rodgers*, 641 S.W.2d 83, 84–85 (Mo. banc 1982). Hence, we feel compelled, as authorized by Rule

---

3. That definition defines "forcible compulsion" as "[a] threat, express or implied, that places a person in reasonable fear of death, serious physi- cal injury or kidnapping of himself or another person[.]"

30.20, to consider whether "manifest injustice or miscarriage of justice has resulted" from it. If so, we must correct the error notwithstanding Kilmartin's lack of complaint.

■ The state defends the variance as not being prejudicial to Kilmartin because both the information and instruction charged him with sodomy and only the method of committing sodomy varied. Indeed, "[a] variance between an information and an instruction is fatal only when the instruction submits a new and distinct offense." *State v. Carter*, 849 S.W.2d 624, 628–29 (Mo.App.1993). "A person may not be 'charged with one offense, or with one form of an offense, and convicted of another.'" *State v. Williams*, 865 S.W.2d 794, 800 (Mo.App.1993) (quoting *State v. Lee*, 841 S.W.2d 648, 650 (Mo. banc 1992)).

In the context of plain error, we need not decide whether the state is correct because we conclude that even if the crimes were distinct, the missing elements did not result in manifest injustice. That M.J.S. was 11–years–old and not married to Kilmartin was uncontested at trial.[4] "[N]o manifest injustice [results] from failing to submit to the jury an element of the crime which was not specifically controverted." *State v. Fowler*, 762 S.W.2d 540, 541 (Mo.App.1988) (plain error review). *See also State v. Walton*, 703 S.W.2d 540, 542 (Mo.App.1985); *State v. Purk*, 625 S.W.2d 888, 890 (Mo.App.1981); *State v. Miller*, 604 S.W.2d 702, 707–08 (Mo.App.1980); *State v. Barber*, 587 S.W.2d 325, 330 (Mo.App.1979). Not only were the missing elements not contested, the state assumed a significantly heavier burden in asserting that Kilmartin had used forcible compulsion and met that burden. We, therefore, do not discern manifest injustice; thus, we do not grant Kilmartin relief pursuant to Rule 30.20.

## Pornography

■ When the police searched Kilmartin's house, they found pornographic magazines. The state offered these as evidence at trial. Kilmartin did not object to the material, so he has not preserved the point for our review. Although he does not specifically

4. We find nothing that would give anyone a serious basis for suggesting that Kilmartin and

request it, we infer from his contention that he wants us to review the point as plain error.

Plain error is "evident, obvious and clear error," *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992). We do not discern plain error in this instance.

Kilmartin raised the issue of whether he kept pornography in his house by cross-examining two witnesses as to whether they had seen "pictures of naked women" or "naked boys" there. "[I]t is proper to examine a witness on any matter which tends to refute, weaken or remove unfavorable inferences resulting from testimony on cross-examination, notwithstanding that the facts elicited may be prejudicial to the defendant." *State v. Lingar*, 726 S.W.2d 728, 734 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). "Furthermore, where the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *Id.* at 734–35.

## Previous Child Molestation Charges

In his third point, Kilmartin complains of the evidence permitted by the trial court concerning his alias, Tony Cicero. The name first came up in M.J.S.' direct testimony:

Q. Want to take you back in time and ask do you know a gentleman named Mark Kilmartin[.]

A. Yeah.

Q. Do you know him by any other name?

A. Yeah.

Q. What other name do you know him by?

A. Tony Cicero.

The alias issue arose again in Kilmartin's cross-examination of M.J.S.:

Q. When you first met Mark Kilmartin what did he tell you his name was?

A. Tony Cicero.

M.J.S. were married or to challenge M.J.S.' testimony that he was 11 years of age.

Q. And that's how you knew him?

A. Yeah.

Q. Did he tell you later what his real name was?

A. Yeah.

Q. So he wasn't hiding that?

A. Hum-um.

Before trial, the trial court denied Kilmartin's motion *in limine* asking the court to exclude references to Kilmartin's use of an alias. The trial court, however, granted Kilmartin's motion *in limine* to exclude references to charges which had been filed against Kilmartin in Wisconsin for failure to appear in court and for sexually assaulting a child.

After cross-examination, the state argued to the trial court:

Your Honor, I think that why [Kilmartin's attorney] asked about Tony Cisco [sic], the fact he was hiding the name, I think is fair to ask what Mr. Cicero told [M.J.S.] about why his name was changed and I think he can tell us according to the statement that he was wanted in Wisconsin for being a child molester.

THE COURT: Your response?

[KILMARTIN'S ATTORNEY]: Judge, I mean—obviously I don't feel I opened the door or I wouldn't have asked the question, but I simply made the point that he was not hiding the name. I don't know how that opens the door to ask further what did the defendant tell you why he had a different name change. It's—it's going to bring up—well, I—well, I didn't think I opened the door.

[STATE'S ATTORNEY]: The down side of it is I wasn't going to imply or anything, just leave it on the table. Now, if taken one step farther that we're not hiding anything, sort of trying to live by the motion in limine, but I think now it's on the table.

THE COURT: Well, I think it would be allowed.

. . . .

[M.J.S.] can say what [Kilmartin] told him but he can't get into anything about any charges or anything like that.

During the state's redirect examination, M.J.S. testified that Kilmartin told him that he was using the alias Tony Cicero because he was "wanted" in Wisconsin on charges of being a child molester.

Kilmartin contends that this testimony was error because he had not opened the door to M.J.S.' explanation for why Kilmartin was using an alias. He argues that he had not asked M.J.S. whether Kilmartin had explained why he was using an alias—only whether Kilmartin was hiding his real name.

The purpose for Kilmartin's cross-examination questions was to suggest that the alias was only a stage name for Kilmartin's disc jockey job. This is apparent in his motion for new trial where he contended, "The Trial Court's ruling forced defense counsel to ask witnesses if [Kilmartin] had hidden his real name. By negative responses thereby, defense counsel attempted to prove lack of guilty conscience on behalf of [Kilmartin]."

■ A trial court has much discretion in determining the extent of redirect examination. *State v. McWhorter,* 836 S.W.2d 506, 508 (Mo.App.1992). The trial court did not abuse its discretion. The state's purpose was to refute Kilmartin's suggestion that he used an alias for innocent reasons. We have already noted that the state may examine a witness on any matter which tends to refute, weaken or remove unfavorable inferences resulting from testimony on cross-examination. *Lingar,* 726 S.W.2d at 734.

■ Kilmartin also complains that the trial court allowed the state to cross-examine two defense witnesses as to why he had used an alias. Kilmartin did not object to the testimony, but he asks us to review it as plain error pursuant to Rule 30.20. Again, the trial court did not evidently, obviously or clearly abuse its discretion in permitting the inquiry given the issue, injected by Kilmartin himself, of his reason for using an alias. We decline to review the point under Rule 30.20.

### Rule 29.15 Motion

Kilmartin raises two points concerning the denial of his Rule 29.15 motion for postconviction relief. He argues in the first that he established that his constitutional rights were

violated because he was not permitted to be present for, and participate in, the individual *voir dire* proceedings at the bench following the general *voir dire*. In the other, he contends that his trial attorney's skill and diligence were below what could be expected of a reasonably competent attorney.

■ The motion court received evidence concerning Kilmartin's contentions and issued findings of fact and conclusions of law. The motion court concluded that the facts and law did not support a decision to grant Kilmartin's motion. We can overrule that decision only if we determine that the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 29.15(j). We do not discern clear error.

■ Concerning Kilmartin's not being at the bench when the trial court individually questioned jurors, the motion court concluded that Kilmartin did not establish any prejudice. The bench conferences occurred after general *voir dire*. The trial court released the jury panel but invited the venire persons to speak to the court privately.

Six persons accepted the invitation. One told the court that as a bondsman he had witnessed "drunks" contend that they were not drunk, and that he often sided with the police in such cases. A second told the court that he believed he was getting the flu. A third said that he was preoccupied with thoughts of a good friend who had been involved in an automobile accident that morning. A fourth said that he had difficulty sitting longer than an hour and a half. A fifth reported frequent migraine headaches which interfered with her concentration. A sixth said that she was a school teacher who had two students she suspected as being victims of abuse. She said that she doubted that she could be fair in considering the evidence.

Although his attorney was at the bench and heard the venire persons, Kilmartin was seated at a counsel table and could not hear them. His attorney testified that he did not think of inviting Kilmartin to accompany him to the bench.

Kilmartin does not articulate what prejudice he suffered other than to cite the opinion of a New York court which determined, as a matter of law, that a defendant excluded from a sidebar *voir dire* is presumptively prejudiced. The New York court ruled that a criminal defendant is entitled to view the venire persons to assess their answers, " 'facial expressions, demeanor and other subliminal responses,' " and his not being allowed to do this during sidebar *voir dire* violated his constitutional rights. *People v. Antommarchi*, 80 N.Y.2d 247, 590 N.Y.S.2d 33, 35, 604 N.E.2d 95, 97 (1992) (citation omitted).

We disagree. Not participating in a sidebar *voir dire* does not impugn Kilmartin's due process rights and is not inherently prejudicial. *State v. McFerron*, 890 S.W.2d 764, 767–68 (Mo.App.1995). The motion court was not clearly erroneous in rejecting Kilmartin's contention.

As for his attorney's level of performance, the motion court determined that, rather than falling below an acceptable level of skill and diligence, Kilmartin's attorney exerted "excellent efforts," and his performance "was sufficient to ensure a fair trial." We find no basis for declaring these findings and conclusions to be clearly erroneous.

■ These determinations are to be made, as the motion court did, by searching the whole record for evidence demonstrating that a trial attorney's overall performance was incompetent. *Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). Kilmartin singles out two events—his attorney's recommendation that he testify and his attorney's not advising him that he could waive jury sentencing—and argues that it constituted ineffective assistance of counsel. He makes no effort to show that his attorney's overall performance fell short of established norms or that he demonstrated a consistent level of incompetence that probably affected the result. Hence, even if Kilmartin was correct in his assertions, he would not be entitled to relief because we find no indication of overall incompetence.

### Conclusion

We affirm the judgments of the trial court and the motion court. In response to his

complaint that the state did not establish forcible compulsion, we find sufficient evidence to support the contention. The state, however, did not charge forcible compulsion. Considering that issue as plain error because of Kilmartin's not preserving it, we conclude that the variance between the information and instruction did not result in manifest injustice. We do not deem the other matters raised by Kilmartin, the pornography found in his home and the prior charge in another state, to be reversible error. Nor do we find the motion court's denial of his Rule 29.15 motion to be clearly erroneous. We, therefore, affirm the trial court's judgment.

All concur.