**STATE of Missouri, Respondent,**

v.

**Frederick SPENCER, Appellant.**

No. ED 77098.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 29, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 2001.

Application for Transfer Denied Aug. 21, 2001.

---

**3.** We deny father's motion for attorney's fees pending appeal and motion to strike mother's reply brief.

---

Raymund J. Capelovitch, Asst. Public Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, MO, for respondent.

AHRENS, Judge.

Frederick Spencer ("defendant") was charged by indictment with one count of forcible sodomy under section 566.060 RSMo 1994 and two counts of forcible sodomy under section 566.060 RSMo (Supp.1993)[1], one count of forcible rape under section 566.030 RSMo 1994 and two counts of forcible rape under section 566.030, one count of sexual abuse in the first degree under section 566.100, and one count of attempted forcible rape under 566.030. The jury found defendant guilty of three counts of forcible sodomy and three counts of forcible rape. Defendant was acquitted of sexual abuse in the first degree and of attempted rape. The court sentenced defendant to a total of fifteen years of imprisonment.[2] Defendant appeals from the judgment on his convictions.

Defendant challenges the sufficiency of the evidence. Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts. M.M. suffers from the disease of schizophrenia. She has auditory hallucinations and first sought treatment when she was eighteen and has been hospitalized for it throughout her life. John Carthen was M.M.'s caseworker. M.M. claimed Carthen sexually abused her. M.M. told several people but was not believed. Carthen directed M.M. to see defendant for psychological treatment. During the weekly sessions from early 1994 through the end of 1994, defendant would sodomize and rape M.M.

M.M. testified that defendant "would unbutton his pants and put my face against him" and "[h]e would put my head to his penis, told me to start." M.M. would react by "gagging and pulling back." At that point, defendant would become very angry and "push" M.M.'s face back against his penis and she would continue to gag. Defendant then yelled at her and told her to turn around and take off her pants. Defendant then raped M.M. M.M. told defendant she did not want to engage in any sexual activities but defendant ignored her.

M.M. testified that she continued seeing defendant throughout 1994 because she was forced to by Carthen. M.M. stated that if she did not see defendant for treatment, she would be kicked out of the hospital where she was residing and be referred to a shelter. Also, M.M. testified that as a condition of her probation she had to see defendant for treatment. In

---

1. All further statutory references are to RSMo (Supp.1993) unless otherwise indicated.

2. Defendant was sentenced to five years of imprisonment on one count of forcible rape and five years of imprisonment on one count of forcible sodomy to run concurrently. Defendant was also sentenced to ten years of imprisonment on the remaining two counts of forcible sodomy and two counts of forcible rape to run concurrently with each other, but consecutive to the prior counts of forcible rape and forcible sodomy.

addition, defendant told M.M. that if she spoke to anyone about what was happening at the weekly sessions, no one would believe her because she already accused Carthen of sexually abusing her.

In 1995, A.G., who was sixteen years old, was referred to defendant because she was having behavioral problems at school, which included fighting and a history of running away. Defendant was helping A.G. apply to Job Corps. On September 18, 1995, A.G. went to defendant's office to get the required final signatures for her Job Corps paperwork. Defendant was with another client and he sent A.G. across the street to grab something to eat. When A.G. returned, defendant was alone.

A.G. sat on the couch and defendant pulled up a chair and sat down in front of her. He touched her stomach and "proceeded to fondle" A.G.'s breasts under her t-shirt. A.G. told defendant she was not comfortable with that. Defendant grabbed A.G.'s arm, "pulled" her up from the couch, "bent" her over a chair and unzipped her pants. A.G. again told him to stop. A.G., however, did not fight him because defendant was much bigger than she was and she again told him to stop. Defendant then raped A.G. Defendant told A.G. that he "was helping me get into Job Corps and he could mess everything up."

Afterwards, defendant dropped A.G. off near her house. The police were called and the officers that interviewed A.G. took her to the hospital for a rape exam. Semen was found in her vagina but there were insufficient quantities to perform a DNA test.

Defendant was also charged with sexual abuse in the first degree and attempted forcible rape of W.C. W.C. alleged these activities took place in defendant's office. Defendant was acquitted of these two charges.

In his first two points on appeal, defendant challenges the sufficiency of the evidence on his use of force necessary to sustain convictions of forcible sodomy and forcible rape against M.M. and A.G. In reviewing a case to determine whether the evidence was sufficient to support a conviction, we consider true all evidence favorable to the state as well as all reasonable inferences that may be drawn therefrom. *State v. Thiele*, 935 S.W.2d 726, 728 (Mo. App.1996). Review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact could find the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993).

As to both M.M. and A.G., defendant was charged with forcible sodomy and forcible rape. An element of each of these crimes is the use of "forcible compulsion." Sections 566.030 and 566.060. Forcible compulsion is either physical force that overcomes reasonable resistance or a threat expressed or implied that places a person in reasonable fear of death, serious physical injury, or kidnapping of himself or another person. Section 556.051(12).

Defendant asserts that he did not exercise force against M.M. or A.G. that would satisfy the definition of forcible compulsion. We disagree. Physical force is force that is applied to the body. *State v. Kilmartin*, 904 S.W.2d 370, 374 (Mo.App. 1995) (quoting BLACK'S LAW DICTIONARY 1147 (6th ed.1990)). M.M. testified that defendant would "put [M.M's] head to his penis" and "told [her] to start." M.M. stated that she would react by "gagging and pulling back." Defendant then would "push" M.M.'s face against him. Defendant exerted actual physical force as to M.M. *See Kilmartin*, 904 S.W.2d at 374.

Defendant also exerted actual physical force as to A.G. She testified that defendant touched her stomach and "proceeded

to fondle" her breasts under her shirt. A.G. further testified that defendant grabbed her and "pulled" her up by her arms and then he "bent" her over the chair and unzipped her pants. Defendant exerted physical force by grabbing A.G.'s arm and pulling her up and bending her over a chair. *See id.*

■ Given defendant applied physical force to M.M. and A.G., it is the "totality of the circumstances [that] determines whether this was physical force which would overcome reasonable resistance." *Id.* Reasonable resistance is that which is suitable under the circumstances. *Id.* Circumstances would include the "ages of the victim and the accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination and control over the victim; and whether the victim was under duress." *Id.*

■ Under the circumstances of this case, defendant's physical force was sufficient to overcome M.M.'s reasonable resistance. Defendant was M.M.'s psychologist. M.M. was referred to defendant because she suffers from schizophrenia and was seeking treatment. Defendant, by being M.M.'s therapist, was in a position of authority over M.M. Furthermore, each sexual attack took place when they were alone in defendant's office, which again placed defendant in a position of domination and control. M.M. stated that she felt she was forced to see defendant because it was a condition of her probation. In addition, M.M. testified she would have been kicked out of the hospital if she stopped going to defendant. Defendant told M.M. that no one would believe her because of her prior sexual assault accusations against her caseworker. In light of the *Kilmartin* factors, we find that defendant's physical force overcame M.M.'s reasonable resistance.

■ We also find under the totality of the circumstances, sufficient evidence that defendant used physical force to overcome A.G.'s reasonable resistance. A.G. was only sixteen years old at the time of the attack. She was a student with behavioral problems at school and was referred to see defendant. Defendant, as A.G.'s counselor, was in a position of authority over A.G. Also, as with M.M., defendant raped and sodomized A.G. in his private office. Furthermore, defendant threatened A.G. stating that he could ruin A .G.'s chances of getting into Job Corps.

Defendant, however, argues that neither M.M. nor A.G. tried to punch, fight, or prevent defendant from engaging in any sexual activities. Missouri law holds that one may be guilty of rape even though the victim offers no physical resistance if she submits through fear of personal violence. *State v. Koonce*, 731 S.W.2d 431, 439 (Mo. App.1987). "Resistance never comes into play where a threat (constructive force) is employed." *Id.* (holding that evidence of defendant lifting victim off of her chair and then smashing her face into a bed and telling her he was going to put her to sleep while he pushed victim's face into his penis was sufficient evidence to establish forcible compulsion).

■ Likewise, the law does not require or expect the utmost resistance to sexual assault when it appears that such resistance would be futile or would provoke more serious injury. *State v. R.D.G.*, 733 S.W.2d 824, 827 (Mo.App.1987). In *R.D.G.*, the defendant repeatedly raped and sodomized his seventeen-year-old stepdaughter. *Id.* at 826. The court held that there was sufficient evidence to support a finding of forcible compulsion where the defendant exerted force upon victim when he "grabbed [victim] by the arm" and victim tried to pull away and told the

defendant to leave her alone. *Id.* Victim, however, testified that she did not scream because "[i]t wouldn't have done any good." *Id.* Defendant did not strike victim or threaten the victim overtly. *Id.* at 826–827. In the present case, M.M. testified that she did not resist because she thought it would be futile. She stated that defendant was much bigger than she. A.G. also testified that defendant was bigger than she was and that her failure to fight back stemmed from her fear that more harm would befall her if she resisted.

Furthermore, in *State v. Dee,* the court ruled that force coupled with an express threat to change victim's custody of her children satisfied the element of forcible compulsion. *State v. Dee,* 752 S.W.2d 942, 946 (Mo.App.1988). The defendant was assigned by Division of Family Services (DFS) to be victim's caseworker. *Dee,* 752 S.W.2d at 944. The defendant raped and sodomized victim in her home during his visits. *Id.* The defendant would grab victim by her arm and push her to the floor or down on the bed and rape her. *Id.* The defendant had also put his knees across victim's arms and forced her to perform oral sex. *Id.* Victim testified that she "offered no physical resistance to appellant's sexual attack." *Id.* The defendant also threatened victim to not tell because he would take her children away if she told. *Id.*

This case is analogous to *Dee.* Here, defendant pushed M.M. and grabbed A.G. during his sexual assaults. With M.M., seeing defendant on a weekly basis was a condition of her probation, a violation of which could have resulted in jail time. Also, defendant told M.M. that no one would believe her if she told. With A.G., defendant threatened to ruin her chances of getting into the Job Corps if she told. As in *Dee,* we find that there was sufficient evidence from which a reasonable fact-finder could find that defendant's actions constituted forcible compulsion against both M.M. and A.G. to sustain defendant's convictions. We find no error. Points denied.

In defendant's third point on appeal, he asserts the trial court erred in not granting a mistrial when the prosecutor inadvertently referred to the defendant testifying during voir dire. Defendant based his claim on the following comments:

[Prosecutor]: Of course, the job the jury has or one of the jobs the jury has, is they have got to sit and listen to the witnesses on the witness stand and then assess the credibility. By that I mean make a decision on whether or not they believe the defendant is telling the truth, telling a lie or if they are mistaken. If they are mistaken, how it affects them—

[Defense Counsel]: May we approach the Bench, Your Honor?

[Sidebar conference.]

[Defense Counsel]: Your Honor, at this time I would move for a mistrial based upon [prosecutor's] statement that they have to assess whether the defendant is telling the truth or telling a lie. That's an obvious comment on testimony of the defendant. The defendant has no obligation to testify in the case. He has injected an issue into the case that does not belong and is highly prejudicial and improper. We have not decided at this moment in time whether or not my client will testify, and yet I think now that the jury is going to be expecting him to testify based upon the statement of counsel.

The Court: Did you say defendant?

[Prosecutor]: If I did, I don't know that I did. I thought I said witness. That's what I usually say. If I said defendant, I have no idea I said it.

The jury took a break, and the court reporter then checked the record and confirmed that the prosecutor did in fact say "defendant ." The court, denying the request for a mistrial, stated:

> The Court: [Defense counsel], you have moved for a mistrial and I'm going to overrule and deny your request at this time. I don't think this gets you to a mistrial. I think, too, for the record nobody is accusing [prosecutor] of deliberately saying this. I think he misspoke. But be that as it may, it's still in the record.
>
> [Defense Counsel]: I concur in that, Judge. I'm sure this was not intentional.

The jury was called back in, and the prosecutor then continued voir dire by saying to the jury:

> Before we took the break, the question I was asking you is whether or not anyone here would have any trouble assessing credibility of a witness who is testifying from the stand. And as I was saying, to assess credibility, I'm referring to whether or not you believe that person's testimony, you disbelieve that person's testimony, or you feel that person is mistaken and how, if at all, does that affect their testimony.

The defendant did not testify at trial, but asked for and received a curative instruction.[3]

■ We review the denial of a request for a mistrial for abuse of discretion. *State v. Johnson,* 968 S.W.2d 123, 134 (Mo. banc 1998).

■ It is error to allude, either directly or indirectly, to a defendant's failure to testify on his own behalf. *State v. Barnum,* 14 S.W.3d 587, 592 (Mo. banc

2000). The prohibition extends even during voir dire. *Id.* A direct reference to defendant's failure to testify occurs when the prosecutor uses words such as "defendant," "accused," and "testify" or their equivalent. *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). "An indirect reference is one reasonably apt to direct the jury's attention to the defendant's failure to testify." *Id.* Where an objection is made and overruled, a direct reference will almost always require a reversal; however, an indirect reference will only require reversal if there was a calculated intent to magnify that decision so as to draw the jury's attention to it. *Id.*

■ However, in addition to the type of reference made, we must also consider the context in which the comment was made. *Id.* at 345. "The prejudicial impact of such a statement is a matter within the sound discretion of the trial court ...." *Id.* The prejudice that can occur from such comments can normally be cured by an instruction to the jury. *Id.*

In *Neff,* the Missouri Supreme Court "refuse[d] to follow the extreme rule" that "an isolated direct reference to a defendant's failure to testify mandates reversal regardless of corrective action taken by the trial court." *Id.* at 346. The court stated that the Missouri statute precluding any comments on a defendant's right to remain silent "does not mandate a mistrial in every case where there is a reference, direct or otherwise, to a defendant's failure to testify." *Id.* at 344. "No sound historical argument, rooted in the statute or the precedent of this Court, supports the sweeping claim that regardless of the circumstances, a direct reference to the de-

---

**3.** The instruction stated: "Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify."

fendant's failure to testify mandates a mistrial." *Id.* at 344–345.

■ In *Neff,* the prosecutor, while objecting during the defense's closing argument, referred to the fact the defendant never testified. Specifically, the prosecutor said, "Well, he didn't take the stand, Judge." The defense counsel asked for a mistrial. The court denied the request, but instructed the jury to disregard the last remark made by the prosecutor. The Missouri Supreme Court held that "the trial court's grant of defendant's objection and its admonition to the jury sufficiently cured any harm the prosecutor's remarks may have inflicted upon defendant." *Id.* at 345. Here, as in *Neff,* the comment was isolated and "not obviously intended to poison the minds of the jurors against the defendant." *Id.* The prosecutor resumed voir dire and, without drawing attention to his slip, reiterated his thoughts concerning witness credibility. We find that this inadvertent, brief, and isolated comment during the early stages of the trial coupled with the jury instruction was sufficient to cure any prosecutorial error and any prejudice that may have resulted. The trial court did not abuse its discretion in overruling counsel's motion for a mistrial.[4] Point denied.

■ In his fourth point on appeal, defendant contends the state improperly questioned defendant's character witnesses regarding a felony arrest in 1998 on other charges. Defendant argues the trial court abused its discretion by allowing the state to ask a defense character witness if he was aware that defendant was arrested in 1998 for attempted forcible sodomy and sexual misconduct. Also, defendant asserts the court erred in allowing the state to reformulate the question leaving out the specific offense and asking if this arrest changed each witnesses' opinion of defendant. We disagree.

Each of defendant's three character witnesses testified on direct as to the defendant's reputation for truthfulness and good moral character in the community. On cross-examination, the state then questioned the first witness as to whether he was aware that defendant was arrested in 1998 for sexual misconduct and attempted forcible sodomy. Defense counsel objected and the court allowed the state to ask about the arrest but not about the specific offenses involved. The court then instructed the jury to disregard the last question. The state then reformulated the question so as to ask only about the felony arrest without saying for what specific offenses. Then the state asked a follow-up question if this felony arrest changed the witness's opinion of defendant. The state repeated these questions to the other witnesses who also testified to defendant's reputation and character.

■ We will review defendant's motion for a mistrial based on the state's leading question informing the jury of a prior conviction for abuse of discretion. *State v. Hill,* 929 S.W.2d 258, 263 (Mo.App.1996).

"The state may cross-examine a witness to defendant's good reputation regarding the fact of prior arrests in order to test both the witness' familiarity with the reputation and the stringency of the standard under which that reputation was earned." *State v. Byrd,* 676 S.W.2d 494, 505 (Mo. banc 1984). Furthermore, if a witness "testifies to his own (or... someone else's) opinion of defendant's character, then the prosecutor may test the legitimacy of the basis for that opinion by inquiring whether the witness (or the other person) is aware

---

4. We note, however, that dismissing the jury and calling a new jury panel could have quickly and easily rectified any possible prejudice or error.

of pertinent bad acts of defendant, including his arrest on other charges." *Id.* Here, each character witness testified as to the reputation of defendant. Therefore, it was proper for the state to challenge the basis of their opinions by asking about a prior arrest on other charges. *State v. Sweet,* 796 S.W.2d 607, 614 (Mo. banc 1990). We find no error, plain or otherwise. Point denied.

In his fifth point on appeal, defendant asserts the trial court erred in allowing the state to ask defendant's three character witnesses if they were aware of defendant's 1987 conviction for patronizing prostitution. Defendant contends that the conviction is not his, and, moreover the state failed to disclose defendant's conviction prior to trial.

Defendant asserts that on May 14, 1996, he filed a motion requesting the state to provide him notice of state's intention to use evidence of other crimes, wrongs, or bad acts of defendant at trial. On May 21, 1996, the state responded by stating that at this time the state has no prior evidence of bad acts to disclose. Thereafter, on June 6, 1996, defendant withdrew his motion. At trial the state then questioned defendant's character witnesses about defendant's 1987 conviction for patronizing prostitutes over defense counsel's objection.

■ We will intervene only if the state's failure to timely disclose resulted in fundamental unfairness. *State v. Candela,* 929 S.W.2d 852, 869 (Mo.App.1996).

■ Defendant argues that Rule 25.03(A)(9) requires the state to disclose the defendant's prior conviction. 25.03 provides:

(A) Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

....

(9) Any material or information, within the possession or control of the state, which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment.

The evidence, however, that defendant requested is contrary to the evidence described in the rule. Defendant's prior conviction for patronizing prostitution does not negate or mitigate the defendant's guilt in the offenses charged. Furthermore, the "prosecution has no obligation to disclose evidence of which the defense is already aware and which the defense can acquire." *State v. Brooks,* 960 S.W.2d 479, 494 (Mo. banc 1997). The defendant is deemed aware of his own prior convictions. *See id.*

■ Defendant asserts, however, that the conviction is not his and that the state was without a good-faith basis for the question concerning the conviction. The "prosecution is authorized to cross-examine a defense witness about alleged prior acts of misconduct on the part of the defendant if the state acts in good faith." *Id.* Likewise, we will not presume that the prosecution acted in bad faith. *Id.* Here, the state had the conviction in hand and the pedigree information matched that of defendant. The state's question was proper and based on good-faith belief that defendant in the present case was also the defendant in the 1987 conviction.

If there were any violations of the discovery rules, we find that it did not amount to fundamental unfairness. Point denied.

■ In his final point on appeal, defendant asserts the trial court erred in denying defendant's motion to sever the charges involving M.M., A.G., and W.C. Defendant contends that joinder was improper and the jury may have considered guilt of one charge as evidence of guilt on the other charges. Joinder and severance are two distinct issues for appellate review. *State v. Langston*, 889 S.W.2d 93, 96 (Mo. App.1994). Joinder is either proper or improper as a question of law; whereas severance is discretionary. *Id.* If joinder is improper then severance is required, but even if joinder is proper the trial court may sever the charges if it believes the defendant will suffer substantial prejudice. *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998).

■ We will first consider whether joinder was proper. Missouri permits joinder in all offenses that are of the "same or similar character or are based ... on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Section 545.140.2. "Similar tactics are sufficient to constitute acts 'of the same or similar character.' " *Langston*, 889 S.W.2d at 96 (quoting *State v. Clark*, 729 S.W.2d 579, 582 (Mo.App.1987)). Here, all the offenses are similar in character. Defendant was charged with committing or attempting to commit sodomy and rape against three women in his office within a two-year span. Defendant had a therapist—patient relationship with both M.M. and A.G. Here, the similarities of the offenses charged are sufficient to join them under Rule 23.05. Joinder was therefore proper under the rule.

■ Next, we consider whether denying the motion to sever was in error. The decision to sever is left to the discretion of the trial court. *Morrow*, 968 S.W.2d at 109. Severance is proper "only if the defendant shows that he will suffer substantial prejudice if the offenses are not tried separately and the court finds the existence of bias or discrimination requiring separate trials of the offenses." *Id.*; Rule 24.07. To determine if it was an abuse of the trial court's discretion to deny severance, we will consider the number of offenses joined, the complexity of the evidence, and the likelihood that the jury can distinguish the evidence and apply it, without confusion to each offense. *Morrow*, 968 S.W.2d at 109. The offenses defendant was charged with were not numerous nor overly complex so that the jury would confuse the evidence. Each woman's testimony was uncomplicated, simple, and straightforward. Defendant, however, claims that he was prejudiced because the jury could have used the evidence of guilt for one act as evidence of guilt for another act. "[T]he mere fact that juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one does not call for severance." *State v. Johnson*, 753 S.W.2d 576, 586 (Mo.App.1988). Each offense was set out in the instructions. Furthermore, a specific instruction was given stating "[e]ach count must be considered separately." Nothing in the record indicated the jury was unable to distinguish between the evidence for each offenses charged. Defendant failed to show he suffered from substantial prejudice by having the charges tried together. We find no abuse of discretion and no error, plain or otherwise. Point denied.

The judgment of the trial court is affirmed.

WILLIAM H. CRANDALL, Jr. and JAMES R. DOWD, JJ., concur.