# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4329

_____

James R. Niederstadt,               *
                                    *
            Appellee,               *
                                    *    Appeal from the United States
      v.                            *    District Court for the
                                    *    Eastern District of Missouri.
Jeremiah W. Nixon, Attorney General *
for the State of Missouri; Jim Purkett, *
                                    *
            Appellants.             *

_____

Submitted:  June 13, 2006.
    Filed:  October 17, 2006 (Corrected: 10/31/06)

_____

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,[1] District Judge.

_____

ARNOLD, Circuit Judge.

James Niederstadt was convicted of one count of sodomy, *see* Mo. Rev. Stat. § 566.060 (Supp. 1991), and sentenced to twenty-five years' imprisonment. The Missouri Court of Appeals reversed, concluding that the evidence was insufficient to support his conviction. *State v. Niederstadt*, No. 23612, 2001 WL 995937 (Mo. Ct. App. July 23, 2001) (*Niederstadt I*). The state then successfully sought review in the Missouri Supreme Court, which reinstated Mr. Niederstadt's conviction. *State v.*

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

*Niederstadt*, 66 S.W.3d 12 (Mo. 2002) (*Niederstadt II*). When Mr. Niederstadt filed a motion for rehearing, the Missouri Supreme Court summarily denied it.

Afterward, Mr. Niederstadt filed a federal petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, which the district court[2] granted on the ground that Mr. Niederstadt's due process rights under the fourteenth amendment had been violated by the Missouri Supreme Court's construction of the sodomy statute. The state appeals, and we affirm the district court's order granting habeas corpus.

I.

S.C. was a sixteen-year-old female at the time of the alleged sodomy in 1992. Her parents, missionaries working in Africa, sent her to live with the Niederstadt family while she attended high school in the United States. When S.C. began to get into trouble at school, Mr. Niederstadt punished her by whipping her back, buttocks, and legs. The whippings occurred about once a month, caused bruises, and made it difficult for S.C. to walk. After one such beating, Mr. Niederstadt choked S.C. and threatened to kill her. Some mornings, while S.C. was in bed, Mr. Niederstadt put his hands under her clothes and fondled her. In March of 1992, S.C. awoke feeling a sharp pain and saw that Mr. Niederstadt had put his finger in her vagina. S.C. asked Mr. Niederstadt what he was doing, and he replied that he was taking her temperature. S.C. testified that Mr. Niederstadt penetrated her vagina with his finger on other occasions, but she did not provide details. She also testified that she was afraid to report the sexual abuse to authorities.

Given these facts, the Missouri Supreme Court held that Mr. Niederstadt had committed sodomy by penetrating S.C.'s vagina with his finger in March of 1992. The applicable statute defined sodomy as "deviate sexual intercourse with another person

---

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

without that person's consent by the use of forcible compulsion." Mo. Rev. Stat. § 566.060.1 (Supp. 1991). The court analyzed the events in light of Mo. Rev. Stat. § 556.061(12)(a) (Supp. 1991), which defines forcible compulsion as "physical force that overcomes reasonable resistance."

Mr. Niederstadt asserts that the Missouri Supreme Court's construction of the sodomy statute unexpectedly changed and retroactively applied the applicable statute, thus violating his due process rights.

## II.

We turn first to the state's argument that Mr. Niederstadt's due process claim was procedurally defaulted because he failed to raise it in the state supreme court before his rehearing motion. In order to preserve a constitutional issue, Missouri law requires that it be raised at the earliest opportunity "consistent with good pleading and orderly procedure." *State v. Wickizer*, 583 S.W.2d 519, 523 (Mo. 1979). Although the state argued in its appeal brief in the Missouri Supreme Court that § 566.060 encompassed Mr. Niederstadt's conduct, the asserted constitutional violation on which Mr. Niederstadt's claim rests was not apparent until the Missouri Supreme Court construed the sodomy statute to include that conduct. Until that point, Mr. Niederstadt had simply maintained that the evidence was insufficient to convict him of forcible sodomy. Because Mr. Niederstadt raised his due process claim as soon as the statute had been construed to include his conduct, it was not procedurally barred.

## III.

What is the appropriate standard of review for Mr. Niederstadt's due process claim? If his claim "was adjudicated on the merits in State court proceedings" relief is available only if those proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1). If, on the other hand, Mr. Niederstadt's constitutional claim was not adjudicated on the merits

by the state court, the deferential standards of the Antiterrorism and Effective Death Penalty Act (AEDPA) do not apply. In that case, we would conduct a *de novo* review of the claim. *Pfau v. Ault*, 409 F.3d 933, 938-39 (8th Cir. 2005).

The motion for rehearing that Mr. Niederstadt filed in the Missouri Supreme Court contains claims involving both federal and state law, and the court's response was a one-line order stating simply that Mr. Niederstadt's "motion for rehearing is overruled." The Missouri Supreme Court's decision did not discuss or even acknowledge Mr. Niederstadt's constitutional claim or any other state or federal claim that he raised. Although in *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999), *cert. denied*, 528 U.S. 1143 (2000), we stated that "the summary nature of a state court's ruling does not affect the § 2254(d)(1) standard of review," the state court in *James* had reviewed the federal claim and "label[ed]" it " 'without merit.' " Likewise, *Weeks v. Angelone*, 528 U.S. 225, 231, 237 (2000), is distinguishable: the state court in *Weeks* had specifically referred to the claim at issue (issue "44"), along with several others, "considered" them, and found that they had "no merit." *Weeks v. Virginia*, 248 Va. 460, 465, 450 S.W.2d 379, 383 (1994).

Since our decision in *James*, we have remarked that determining when a state court has decided an issue on the merits is "not so easy" and indicated that there are no hard-and-fast rules. *Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1189 (2005). And we recently conducted a detailed examination of a state court opinion before determining that the opinion resolved a particular claim regarding the prosecution's argument to the jury on the merits. *Weaver v. Bowersox*, 438 F.3d 832, 838-39 (8th Cir. 2006).

Given our careful approach in *Weaver*, we have some doubt that the state court's one-sentence ruling here warrants the application of AEDPA. In our en banc decision in *Brown*, 371 F.3d at 461, we said that we must "simply look at what [the] state court has said, case by case, and determine whether the federal constitutional claim was

considered and rejected by that court." Here, where the state court said nothing, it would not be obviously wrong to conclude that it did not consider Mr. Niederstadt's claim so that we would have to review it *de novo*.

But even assuming that the due process claim here "was adjudicated on the merits," 28 U.S.C. § 2254(d), and AEDPA applies, we believe that Mr. Niederstadt is entitled to habeas relief. When we decide an issue under AEDPA that the state court denied without providing an explanation, we must "conduct an independent review of the record and applicable law to determine whether state court decision is contrary to federal law [or] unreasonably applies clearly established law." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). For the reasons that follow, we believe that the state court's denial of Mr. Niederstadt's due process claim is an unreasonable application of clearly established Supreme Court due-process precedent.

IV.

Over forty years ago, the Supreme Court said that "[t]he basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court." *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964). While the due process clause does not incorporate the specific prohibitions of the ex post facto clause, *Rogers v. Tennessee*, 532 U.S. 451, 458 (2001), the "concepts of notice [and] foreseeability" are at its core, *id.* at 459. And thus the due process clause is violated when a court gives retroactive effect to "a judicial construction of a criminal statute [that] is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Bouie*, 378 U.S. at 354 (quoting Jerome Hall, *General Principles of Criminal Law* 61 (2d ed. 1960)); *see also Rogers*, 532 U.S. at 461.

As we have said, the Missouri sodomy statute, at the time of Mr. Niederstadt's conduct, prohibited "deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion." Mo. Rev. Stat. § 566.060.1

-5-

(Supp. 1991). Deviate sexual intercourse included "any sexual act involving the genitals of one person and the mouth, tongue, hand, or anus of another person." Mo. Rev. Stat. § 566.010(1) (Supp. 1991). Forcible compulsion was defined as "physical force that overcomes reasonable resistance" or "a threat, express or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping of himself or another person." Mo. Rev. Stat. § 556.061(12) (Supp. 1991).

Mr. Niederstadt admits that the evidence would have been sufficient to convict him of deviate sexual assault in the first degree, Mo. Rev. Stat. § 566.070(1) (1986), which applied when the victim was an incapacitated person, or deviate sexual assault in the second degree, Mo. Rev. Stat. § 566.080(1) (1986), which applied to an assault of a sixteen-year-old victim by a person seventeen years or older. Neither of these crimes included the element of forcible compulsion. Mr. Niederstadt argues that he did not use forcible compulsion to accomplish the act, and that the Missouri Supreme Court's construction of § 556.061(12)(a) to include his conduct diverged so widely from the law as it existed at the time of his offense as to violate his due process rights.

The Missouri Supreme Court held that Mr. Niederstadt used physical force against S.C., a minor dependent on him for care, in such a manner that her reasonable resistance to his sexual assaults was greatly reduced and then sodomized her while she slept. The act of penetrating S.C.'s vagina itself required force to be applied to her body, the court held, and that satisfied the physical force element of the statute. *Niederstadt II*, 66 S.W.3d at 14-16. Several years after Mr. Niederstadt's conduct, the Missouri courts had defined "physical force" as " '[f]orce applied to the body,' " *State v. Kilmartin*, 904 S.W.2d 370, 374 (Mo. Ct. App. 1995) (quoting Black's Law Dictionary 1147 (6th ed. 1990)).

In determining whether the force used was sufficient to overcome S.C.'s reasonable resistance, Mo. Rev. Stat. § 556.061(12)(a) (Supp. 1991), the Missouri Supreme Court looked at "the totality of the circumstances" in accordance with

-6-

Missouri precedent. *Niederstadt II*, 66 S.W.3d at 15. These circumstances include "the ages of the victim and the accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination and control over the victim; ... whether the victim was under duress," *Kilmartin*, 904 S.W.2d at 374, and whether the sexual act was preceded by threats or violence. *Niederstadt*, 66 S.W.2d at 15. The state supreme court then stated that the beatings, the age difference between Mr. Niederstadt (who was about forty years old at the time of the assault) and sixteen-year-old S.C., her dependence on Mr. Niederstadt for subsistence, and her fear of him were relevant in determining the reasonable level of resistance that could have been expected from S.C. Additionally, the court determined that because the act that S.C. described in detail was initiated when she was sleeping, her expected reasonable resistance was extremely low. *Niederstadt II*, 66 S.W.3d at 15-16.

Under *Bouie*, we must determine what law "had been expressed prior to the conduct in issue." We first examine the statutory language. Section 566.060 required that the "deviate sexual intercourse" be accomplished "*by the use of* forcible compulsion" (emphasis added); it does not give notice that the intercourse itself can be the force used to accomplish the intercourse or that a sleeping or unconscious victim can be "compelled." Under § 556.061(12), "forcible compulsion" is defined as "physical force that overcomes reasonable resistance," but this definition does nothing to bring Mr. Niederstadt's conduct within the scope of § 566.060: it provides no notice that "physical force" can be the intercourse itself or that the victim (whose "reasonable resistance" is overcome) may be asleep. Therefore we do not believe that the statutory language provided "fair warning" that Mr. Niederstadt's conduct came within the terms of the crime with which he was charged.

Case law also plainly failed to provide the notice that due process requires. No Missouri case before Mr. Niederstadt's holds or implies that the force necessary for forcible compulsion is equivalent to the performance of the sexual act which the statute states the forcible compulsion is used to accomplish. Nor had any case held

or implied that a defendant could be convicted under § 566.060 when the victim was asleep and unaware of the acts alleged to be "forcible compulsion." For example, in *State v. R_ D_ G_*, 733 S.W.2d 824, 827 (Mo. Ct. App. 1987), the court's discussion of force focused on the defendant's grabbing and holding the victim's arms and dragging her into a bedroom. Here S.C. testified that she was not even aware that Mr. Niederstadt was in the room until she awoke and, according to the Missouri Supreme Court, the deviate sexual intercourse had already been accomplished "by the use of forcible compulsion," Mo. Rev. Stat. 566.060. And even *Kilmartin*, relied upon to uphold Mr. Niederstadt's conviction, would not have provided "fair notice" if it had been decided before Mr. Niederstadt's charged conduct. The defendant in *Kilmartin*, 904 S.W.2d at 374, repeatedly requested that the victim, an eleven-year-old boy, allow the defendant to massage his penis. After the boy refused, the defendant grabbed the child and held him; the child then ceased to resist and was sodomized by the defendant. *Kilmartin* specifically held that the force "applied to the body" was that used to grab and hold the victim (not the force used to massage his penis). *See id.* And we find it telling that after noting that the defendant "reinforced his physical force-grabbing the boy and holding him-with many psychological factors intended to instill fear and wear down the boy's resistance," the court in *Kilmartin* concluded that the tactics used by the defendant were "near the outer limits as to what constitutes forcible compulsion."

In holding that the force used to penetrate S.C. could fulfill the element of forcible compulsion, the Missouri Supreme Court reconfigured the sodomy statutes in an unexpected way. Under this construction, the element of "forcible compulsion" collapses into the element of "deviate sexual intercourse," Mo. Rev. Stat. § 566.060.1 (Supp. 1991), and sodomy, when committed against a victim from whom virtually no reasonable resistance is expected, such as the sleeping victim here, becomes indistinguishable from the offense of deviate sexual intercourse in the second degree, which does not require proof of forcible compulsion. At the time of Mr. Niederstadt's conduct, neither the plain language of the sodomy statute nor the case law supported

such a construction. Where, as here, a court construes a criminal statute in a way that removes an entire element, it violates the principle of fair warning that underlies the constitutional right to due process if, in the same case, the court uses that new statutory interpretation to uphold the defendant's conviction.

We conclude that the Missouri Supreme Court's decision was an unreasonable interpretation of United States Supreme Court due-process jurisprudence in *Bouie* and other cases because we believe that it is quite obvious that neither the plain language of the statute nor state law at the time of Mr. Niederstadt's conduct defined "forcible compulsion" as encompassing his acts. We agree with the Missouri Court of Appeals, which stated in its opinion reversing Mr. Niederstadt's conviction that "there are no facts in this case of persuasion or force. Defendant appeared while S.C. was sleeping. He initiated the sexual act while she slept. Defendant's actions caused her to awaken. There was no evidence of forcible compulsion, as § 556.061(12) defines that term, before or after S.C. awoke." *Niederstadt I*, 2001 WL 995937, at *3. Significantly, one member of the panel, after concurring in the state court of appeal's unanimous opinion, wrote separately to express his "chagrin" that the reversal resulted from the prosecutor's decision to pursue this charge: "Why the prosecutor chose to undertake the burden of proving forcible compulsion -- *an impossible task on the evidence here* – defies explanation." *Id.* at *4 (Shrum, J., concurring) (emphasis added).

We recognize that the method of the common law will cause legal principles to migrate and expand somewhat as words and principles encounter new facts. But in the present case the Missouri Supreme Court's application of the sodomy statute represents not the gradual evolution of a principle but a quantum leap that essentially redefines a statutory crime.

We recognize, too, that it is the sole province of the Missouri courts to construe their own statutes and that such constructions as those courts may give them are authoritative and binding on federal courts. We have no appellate jurisdiction over

state courts and would not presume to venture an opinion that the interpretation that the Missouri Supreme Court gave the statute relevant to this case was incorrect: Indeed, it was correct by definition. The Missouri Supreme Court's interpretation of the statute remains intact, unaffected by our ruling, and the courts of Missouri are free to apply it to any conduct that occurs after the Missouri Supreme Court's ruling in Mr. Niederstadt's appeal. We hold only that in applying its construction to Mr. Niederstadt, the Missouri Supreme Court violated his right to due process.

Affirmed.

LOKEN, Chief Judge, dissenting.

I respectfully dissent. In my view, the court misapplies the due process principles of Bouie v. Columbia, 378 U.S. 347 (1964), and Rogers v. Tennessee, 532 U.S. 451 (2001). In Rogers, a divided Supreme Court refused to extend Bouie to a state court decision overruling a common law rule that otherwise would have barred petitioner's conviction. The opinion of the *dissenting Justices* explaining how Bouie should be applied is highly relevant to this case involving a criminal statute:

> Many criminal cases present some factual nuance that arguably distinguishes them from cases that have come before; a court applying the penal statute to the new fact pattern does not purport to *change* the law. That, however, is not the action before us here, but rather, a square, head-on *overruling* of prior law . . . .

532 U.S. at 471 (Scalia, J., dissenting). Here, the Supreme Court of Missouri applied the governing statute to a new fact pattern; it did not overrule prior law.

The due process inquiry under Bouie is whether the judicial construction of a criminal statute was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." 378 U.S. at 354. In only one prior

-10-

Missouri case was a sodomy conviction reversed. State v. Daleske, 866 S.W.2d 476 (Mo. App. 1993).[3] Here, the Supreme Court of Missouri's opinion carefully considered the Missouri Court of Appeals decision in Daleske and found it "readily distinguishable" on two grounds: (i) Daleske was not submitted to the jury under Mo. Rev. Stat. § 556.061(12)(a) and thus its discussion was dicta, and (ii) in any event the defendant in Daleske employed only *de minimis* force, whereas here the victim "was awakened by a sharp pain which she discovered was caused by defendant's finger in her vagina." State v. Niederstadt, 66 S.W.3d 12, 14 (Mo. banc 2002). I think Daleske was properly distinguished. But what matters is that the Supreme Court of Missouri engaged in the type of fact-based analysis described in Justice Scalia's dissent in Rogers. Therefore, its decision cannot be deemed contrary to or an unreasonable application of Bouie as construed in Rogers.

I disagree with the court's conclusion that the Supreme Court of Missouri "reconfigured the sodomy statutes in an unexpected way." Supra, p. 8. The statute required proof of "physical force that overcomes reasonable resistance." The Supreme Court of Missouri first noted there can be "no question but that defendant used physical force to insert his finger in the girl's vagina." Niederstadt, 66 S.W.3d at 15. That is literally true; thus, the court's assertion that the statutory language "provides no notice that 'physical force' can be the intercourse itself" is simply wrong. The court goes on to complain that this construction of the statute "remove[d] an entire element" from the sodomy offense because lesser included deviate sexual

---

[3]All prior cases cited by Niederstadt or discussed by the district court were decisions by the Missouri Court of Appeals. The Supreme Court of Missouri had not previously construed the term,"physical force that overcomes reasonable resistance," in Mo. Rev. Stat. § 556.061(12)(a) (Supp. 1991). In Hagan v. Caspari, 50 F.3d 542, 547 (8th Cir. 1995), we questioned "whether a state supreme court's overruling of an intermediate appellate court decision can ever constitute a change in state law for due process purposes. In fact, we are strongly inclined to agree with the state that until the state's highest court has spoken on a particular point of state law, the law of the state necessarily must be regarded as unsettled."

-11-

intercourse offenses also include this type of force.  However, by noting that <u>Daleske</u> involved *de minimis* force in committing deviate sexual intercourse, unlike the pain-inflicting force used by Niederstadt in this case, the Supreme Court of Missouri preserved a distinction between the offenses.

The Supreme Court of Missouri then discussed the "critical question" of "whether the acts of deviate sexual intercourse were done by use of physical force that 'overcomes reasonable resistance.'"  66 S.W.3d at 15.  The Court looked to the coercive beatings, threats, and sexual indecencies the forty-year-old Niederstadt had previously inflicted on this sixteen-year-old girl who was living in his house.  The Court concluded that Niederstadt's conduct and his "complete control and dominance over every aspect of the girl's life" provided sufficient evidence for the jury to find that he used physical force that overcame "[t]he reasonable resistance expected of an unconscious or sleeping person."  66 S.W.3d at 16.  That construction did not "unexpectedly broaden[] a statute which on its face had been definite and precise." <u>Bouie</u>, 378 U.S. at 353.  Nor was it an unexpected departure from prior decisions on closely comparable facts.  Supported by no prior Missouri law, the court concludes that a sleeping victim cannot be "compelled" and therefore Niederstadt had no warning that his crime would be severely punished as sodomy.  That conclusion requires more knowledge of the human mind and behavior than I possess.  Worse yet, it rejects out of hand the Supreme Court of Missouri's conclusion that the entire relationship between the perpetrator and the victim is relevant to the sodomy inquiry under Missouri law.  <u>Bouie</u> did not give federal courts unrestrained power to apply the Due Process Clause in this manner.

Missouri law gave Niederstadt fair warning that his despicable conduct would subject him to severe criminal penalties.  I would reverse the judgment of the district court and remand with instructions to deny the petition for a writ of habeas corpus.

—————————————————————

-12-