**STATE of Missouri, Respondent,**

v.

**James R. NIEDERSTADT, Appellant.**

No. SC 83914.

Supreme Court of Missouri,
En Banc.

Jan. 22, 2002.

Rehearing Denied Feb. 26, 2002.

Daniel T. Moore, Keith D. Sorrell, Poplar Bluff, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Edgington, Asst. Atty. Gen., Jefferson City, for Respondent.

JOHN C. HOLSTEIN, Judge.

Following a trial without a jury, defendant James Niederstadt was convicted of forcible sodomy. *Sec. 566.060.1.*[1] The defendant appealed initially to the Missouri court of appeals and, after opinion, this Court granted transfer. *Mo. Const. art. V, sec. 10.* The sole issue on appeal is the sufficiency of the evidence. The judgment is affirmed.

### I.

In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in a jury tried case. Rule 27.01(b); *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992). The

---

1. Unless otherwise noted, all references to statutes are to *RSMo Supp.1991.*

appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty. *Id.* The Court examines the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences. *Id.*

The victim, S.C., was a sixteen-year-old female at the time of the alleged sodomy in 1992. She was the daughter of American missionaries serving in Gambia, West Africa. In 1991, S.C. was sent by her parents to Malden, Missouri, to attend high school and to live with defendant and his family. Prior to coming to defendant's home, she had no sexual experience. In July and August of 1991, defendant began engaging in inappropriate kissing on the lips and fondling of the girl's breasts and touching her between her legs.

At the religious school she attended, she began getting into trouble. The school administered detention as punishment. Defendant's punishment was to administer whippings to the girl's buttocks, back, and legs. He contended the girl was "rebellious and needed it." The beatings were so severe that S.C. suffered bruising, making it painful for her to walk and difficult for her to participate in physical education classes. The beatings occurred about once per month during her stay in the Niederstadt home. Sometimes on the morning after a beating, the defendant would come into S.C.'s room, take off her clothes and underwear, and count her bruises out loud. Following one such beating, defendant attempted to strangle S.C., squeezing her neck and repeatedly saying, "I could kill you right now." He eventually released her. Because of the beatings and threats, on one occasion S.C. attempted to run away from the defendant's home but returned the same day. S.C. stated she was afraid to report the sexual misconduct to authorities.

Like the beatings, the fondling incidents continued throughout the school year, usually occurring in the early morning. Defendant would come into the girl's room and place his hand under her clothes and underwear. While he touched her, he would masturbate.

The information alleged that the deviate sexual intercourse occurred in March of 1992. The victim testified to several such incidents but only gave details as to one in March of 1992. S.C. testified that she had been feeling sick and went to sleep in her room. She was awakened by a sharp pain which she discovered was caused by defendant's finger in her vagina. When she awoke, defendant told S.C. he was "checking [her] temperature." Defendant admitted to that incident. S.C. testified that later in March there were other occasions when defendant penetrated her vagina with his finger.

On this evidence, the trial judge found defendant guilty and sentenced him to prison. This appeal followed.

## II.

Sodomy, as defined by the law in effect in 1992, included having "deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion." *Sec. 566.060.1.* "Deviate sexual intercourse" was defined as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." *Sec. 566.010(1).* "Forcible compulsion" was defined as:

(a) physical force that overcomes reasonable resistance; or

(b) a threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person;

*Sec. 556.061(12).*

Here, there is no question about the fact that defendant committed an act

of "deviate sexual intercourse" on a sixteen-year-old girl who lived in his home. There is also no question but that defendant used physical force to insert his finger in the girl's vagina. Physical force is simply "[f]orce applied to the body." *State v. Kilmartin*, 904 S.W.2d 370, 374 (Mo. App.1995), *citing Black's Law Dictionary* 1147 (6th ed.1990). The evidence here clearly shows that several acts of deviate sexual intercourse involving physical force were committed during the time period, March of 1992.

The critical question here is whether the acts of deviate sexual intercourse were done by use of physical force that "overcomes reasonable resistance." *Sec. 556.061(12)*. The force involved need not come after the victim has physically resisted. *State v. Thiele*, 935 S.W.2d 726, 729 (Mo.App.1996). Certainly, the law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile or would provoke a more serious injury. *State v. R_D_G_*, 733 S.W.2d 824, 827 (Mo.App. 1987). Rather, the force used must be calculated to overcome the victim's resistance and complete the act of deviate sexual intercourse. *Kilmartin*, 904 S.W.2d at 374.

In determining if the force used is sufficient to overcome reasonable resistance, the court does not look to any single fact but to the totality of the circumstances. *State v. Kilmartin*, 904 S.W.2d at 374. Among the factors taken into account in considering the totality of the circumstances are whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress. *State v. Spencer*, 50 S.W.3d 869 (Mo.App.2991) (quoting *State v. Kilmartin*, 904 S.W.2d at 374). Each case necessarily turns on its own facts.

In this case, the victim had been subjected to repeated beatings and threats prior to the sexual incidents in March of 1992. The age difference was also noteworthy. The defendant was about forty years of age, while the victim was only sixteen and quite naïve in sexual matters. The incidents all occurred in the defendant's home where S.C. had been sent to live by her parents. The girl was wholly dependant on defendant for her subsistence. Due to the beatings and fear of further violence, she was afraid to report the incidents to authorities. It is fairly inferable that the same fear that kept her from reporting the sexual assaults also was likely to overcome her ability to resist those assaults.

It is true that factual differences may be identified distinguishing this case from other sodomy cases involving the question of whether the force used was sufficient to overcome reasonable resistance. For example, in *Kilmartin*, the thirty-year-old defendant enticed an eleven-year-old boy to his house. After showing the boy some karate moves and working with weights, the accused asked if he could give the boy a "penis massage." After the boy refused the request two times, the accused grabbed the victim, saying, "I could force you, but I'm not that kind of guy." The defendant's comment frightened the child. The defendant then asked the boy a third time, and the victim relented to the sexual activity. 904 S.W.2d at 373. The court held the evidence sufficient to establish forcible compulsion.

Unlike *Kilmartin*, the defendant here made no direct statement that he "could force" himself on the victim, but his conduct spoke much louder than any words.

In every other respect, the facts here are more indicative of conduct that overcame reasonable resistance than in *Kilmartin.* Defendant's complete control and dominance over every aspect of the girl's life, the fact that he sought her out in the privacy of her bedroom late at night or in the early morning hours, the repeated beatings and threats of violence, and the fear such conduct engendered in the victim were all ample circumstantial evidence pointing to the fact that the defendant overcame any reasonable resistance by the victim.

The defendant makes much of the fact that on the one occasion of deviate sexual intercourse about which there is more detail and the one to which defendant confessed, S.C. was asleep when he inserted his finger into her vagina. He argues that because she was asleep, he did not use forcible compulsion. As noted above, forcible compulsion is the force necessary to overcome reasonable resistance. Reasonable resistance is determined by the totality of the circumstances. One circumstance relevant here is that the victim was asleep. Where the victim is incapable, due to being in an unconscious or sleeping state, of resisting a sexual assault, the inability to resist does not inure to the benefit of the accused. Rather, it is an additional factor taken into account in determining if the accused overcame reasonable resistance. The reasonable resistance expected of an unconscious or sleeping person is extremely low and is all the more easily overcome by a sexual assailant. Under the totality of the circumstances here, the evidence was sufficient to find the defendant had deviate sexual intercourse by the "use of forcible compulsion."

The primary case relied on by defendant is *State v. Daleske,* 866 S.W.2d 476 (Mo.App.1993). That case is readily distinguishable. There, a stepfather was charged with committing deviate sexual intercourse with his stepdaughter, in violation of section 566.060. The state submitted its case to the jury based on the definition of "forcible compulsion" found in section 556.061(12)(b), that is, threats of death or serious bodily injury or kidnapping. There was no evidence to support any of those facts. In addition, the court noted that the only evidence of physical force was that the stepfather had guided the victim's head down to his genitals during a sex act. The court found that to be insufficient evidence of physical force that overcame reasonable resistance. In addition, the only "threat" to the victim was a promise to relieve the teenager of a previous grounding punishment in return for her sexual favors. Unlike the case at hand, in *Daleske* there was no evidence of beatings, physical threats or sexual assaults while the victim was asleep or unconscious, as occurred in this case. *Daleske* is inapposite.

The judgment is affirmed.

All concur.