STATE of Missouri, Plaintiff–Respondent,

v.

Adrian GOMEZ, Defendant–Appellant.

No. 24628.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 12, 2002.

Motion for rehearing and transfer to Supreme Court denied Dec. 3, 2002.

Application for Transfer Denied Jan. 28, 2003.

---

Amy M. Bartholow, Assistant State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before PREWITT, P.J., RAHMEYER, C.J. and MAUS, Sr. J.

PER CURIAM.

The issue presented in this case is whether Adrian Gomez ("Defendant")[1] can be convicted of forcible rape of a person who has been declared mentally incapacitated when the trial court found there was no substantial evidence of any threats, express or implied, or testimony about physical force. In the court-tried case, the trial

---

1. Throughout the record Defendant is referred to as "Adrian Gomez" or "Adrian Gomes." Defendant claims to be an illegal alien from Ixtapa, Mexico whose real name is Gelasio Rios Lopez. Defendant uses the name "Adrian Gomez" when he is in the United States.

court found that physical force must be inferred from the victim's mental capacity and, thus, Defendant was convicted of forcible rape and sentenced to seven years imprisonment.[2] We must reverse.

The victim, a nineteen-year-old female, with a mental capacity between four and eight years, was alone in a motel room at 3:00 in the afternoon in her pajamas when a motel worker, Defendant, had sexual intercourse with her.[3] The victim testified that "[h]e had sex with me," and "[h]e touched my butt." She described the encounter to a nurse who examined her after the incident as follows: "He took off my jammies, my panties, he put his penis in my booty, I pushed him, I said 'Stop it', he quit." The victim's mother had been attending a meeting at the motel and had been trying to reach the victim by phone during a break. When the victim finally answered the phone she was crying, so her mother immediately went to the room to check on her. The victim testified that his penis was hard and that white stuff was coming out of it. Vaginal and rectal swabs indicated a weak amount of semen which was consistent with a mixture of the victim and Defendant's DNA.[4] Defendant does not speak English and there is no indication that any conversation occurred between the two.

To be convicted of forcible rape, the court must have found that the rape occurred by "forcible compulsion." Forcible compulsion is defined as either; "(a) [p]hysical force that overcomes reasonable resistance; or (b) [a] threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person." § 556.061(12).[5] The applicable provision to this case is "physical force that overcomes reasonable resistance."

In a well-reasoned and detailed opinion, the trial court found that although there was no evidence of any threats, express or implied, or testimony about physical force, the mental capacity of the victim was dispositive on the issue of forcible compulsion. There was no testimony from the victim that she was afraid of Defendant. The court inferred physical force from the victim's mental capacity. The court indicated that the defendant was "clearly bigger than the victim" and his size alone would constitute physical force and/or an implied threat. The victim was just shy of five foot and weighed about 105 pounds.

Analogizing the situation to the rape of a person under the age of seventeen, which does not require proof of anything other than sexual intercourse, the age of the perpetrator, and/or the age of the victim, the court indicated that because of the circumstances of the victim having the mind of a child, forcible compulsion occurred. The court specifically found that, although common sense would indicate that forcible compulsion is without consent, the element of "without consent," is not specifically included as an element of the crime of forcible rape and, therefore, sexu-

---

2. Defendant was acquitted of forcible sodomy.

3. Defendant contests the sufficiency of the evidence concerning the element of "forcible compulsion." We will assume the facts in the light most favorable to the verdict. *State v. Niederstadt*, 66 S.W.3d 12, 14 (Mo. banc 2002).

4. Two swabs were taken of the rectal area and two from the vaginal area. All four swabs were placed in the same envelope where they were free to cross-contaminate each other. The envelope was labeled "vaginal swab" and there was no indication that there were any rectal swabs.

5. All references to statutes are to RSMo 2000, unless otherwise indicated.

al assault is not a lesser included offense of forcible rape.

■ Defendant argues that he was not charged with statutory rape as the victim was nineteen, nor was he charged with sexual assault which requires proof of lack of consent. Defendant also argues that when the victim asked him to "stop," he stopped. He contends the trial court misconstrued its finding regarding forcible compulsion because the trial court found that the victim's telling the defendant to "stop" was reasonable resistance for a person of her mental capacity, and therefore, physical force was exerted.

Respondent argues that Defendant did not stop when the victim told him to stop.[6] Respondent cites to trial testimony indicating that the victim did not want Defendant to touch her breasts or put his penis in her vagina.[7] Respondent argues that we look to the correct result, not the correct reasoning. Respondent further argues that even if there was insufficient evidence to support a conviction of forcible rape, Defendant should not be discharged, but should be convicted of the lesser-included offense of sexual assault.[8]

■ We look to the most recent pronouncement of our Supreme Court for guidance. In *State v. Niederstadt*, 66 S.W.3d 12 (Mo. banc 2002), the court was faced with the question of whether forcible compulsion had occurred in a trial for forcible sodomy. The court found that the element of "physical force" simply meant "force applied to the body." *Id.* at 15. At issue was whether such force was sufficient to "overcome reasonable resistance."

> In determining if the force used is sufficient to overcome reasonable resistance, the court does not look to any single fact but to the totality of the circumstances. Among the factors taken into account in considering the totality of the circumstances are whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress. Each case necessarily turns on its own facts.

*Id.* at 15 (citations omitted).

In *Niederstadt*, the victim had been subjected to repeated beatings and threats prior to the sexual incidents and was totally dependent upon the much older defendant for subsistence. *Id.* He was her legal and actual guardian. We do not have similar facts in this case.

■ In the case before us, the Defendant did not speak English. We rely upon the finding of the trial judge who indicated that there was no evidence of any threats,

---

6. The victim's testimony about when Defendant stopped is confusing and contradictory. On direct examination, the victim was asked if Defendant stopped when she told him to stop and the victim replied "no." On cross-examination the victim was asked if Defendant stopped when she said "stop" and the victim said "yes." However, the victim later testified as follows:

> Q. And can you tell us what he did when you said "stop"? Can you tell the judge what he did at that time? Do you remember? Can you tell me what he did at that time when you said "stop"?

> A. No.
> Q. You can't tell me?
> A. (The witness shook her head.)

7. Clearly, questioning the victim was difficult. It is not clear whether the victim meant she didn't want to have intercourse at the time or in any way relayed that sentiment or if now, in retrospect, she didn't want the accused to touch her breasts or put his penis in her vagina.

8. *See* § 566.040.

express or implied, or testimony about physical force. It is clear from the judge's own questions that the victim had a serious mental incapacity;[9] however, there is no testimony regarding the Defendant's knowledge of the victim's mental capacity. Likewise, even with the conflicting testimony of the victim, it appears that when she told the Defendant to stop, he stopped. The incident occurred while the victim was alone in a motel room. The court specifically noted that there was no testimony that the victim was afraid of the Defendant.[10] We cannot equate the victim's lack of mental capacity alone to be sufficient to satisfy the forcible compulsion element which is necessary for a conviction of rape under § 566.030.[11] The conviction for forcible rape cannot stand; however, we must still decide whether a violation of § 566.040, sexual assault, is a lesser included offense of § 566.030, rape.

█ Our analysis is hampered by the significant changes in the criminal code that have taken place in the past fifteen years, and the case law which involves a significantly different crime of rape and sexual assault. The current relevant portion of § 566.030 states: "A person commits the crime of forcible rape if such person has sexual intercourse with another person by the·use of forcible compulsion." § 566.030.1.

The 1994 amendment to this section deleted the phrase "without that person's consent," which previously followed the phrase "with another person." The jury instructions require that the state prove that 1) the defendant had sexual intercourse with the victim; 2) the defendant did so by the use of forcible compulsion; and 3) the defendant did so knowingly. MAI–CR3d 320.01.

The Comment to the 1973 Proposed Code indicates that regarding § 566.030:

Subsection 1(1) continues the common law concept of forcible rape—intercourse by "forcible compulsion." If the

---

9. The trial judge engaged in the following dialogue with the victim:

Q. It's nighttime. Is that true or false?
A. True.
Q. Would you think about that again? Is it nighttime?
A. (The witness shook her head).
Q. You're shaking your head no. Is it daytime? I'm asking you now this time. Is it daytime, yes or no?
A. No.

10. The case is troubling as the victim was a nineteen-year-old woman who was on birth control pills and had been seen by her mother masturbating. The victim had also received some sex education at school and had a friend who talked about sex and "was a little boy crazy." The victim's mother testified that while the victim really never seemed that interested in sex, she was sure the victim wished "she had a boyfriend like the other kids and that kind of stuff."

11. We need to be clear that we are not stating that a finding of mental incapacity of the victim is irrelevant in a case of forcible rape. We are stating that there is not sufficient evidence in this case that any violence or threats preceded the sexual act; that there was a great disparity in the ages of the victim and accused; that there was any intimidation in the atmosphere or setting; that the accused was in any position of authority, domination, or control over the victim; or that the victim was under duress. A conviction of forcible rape has been, and should be, upheld where the victim is mentally incapacitated **and** there is sufficient evidence of physical force or threats that overcome reasonable resistance. *See State v. Spencer*, 50 S.W.3d 869 (Mo.App. E.D.2001) (where both victims were seeing the defendant for psychological counseling); *State v. Dighera*, 617 S.W.2d 524 (Mo.App. W.D.1981) (where the victim was a deaf, mute and blind twenty-year-old that the court characterized as "helpless" and the defendant forced the victim to drink to excess, wouldn't take the victim home upon her request, and the victim testified that she did not hit or push the defendant because she could "get brutally beat up").

compulsion is not physical force that overcomes reasonable resistance, or a threat that places a person in reasonable fear of death, serious physical injury or kidnapping, the actor should not be held guilty of the serious crime of rape, although he may be found guilty of a lesser offense, *e.g.,* an assault under § 565.060[12] or § 565.070.[13]

MO. ANN. STAT. § 566.030 (1999).

On the other hand, a violation of § 566.040, sexual assault, occurs when: "A person ... has sexual intercourse with another person knowing that he does so without that person's consent." § 566.040.1. In 1994, the legislature omitted language regarding mental incapacity. The prior definition of sexual assault was: "A person commits the crime of sexual assault in the first degree if he has sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old." § 566.040.1 RSMo 1978.

To convict a person for sexual assault, the state must show that 1) the defendant had sexual intercourse with the victim, 2) the defendant did so without the consent of the victim and 3) the defendant knew or was aware that he did not have the consent of the victim. MAI–CR3d 320.07.

For the purposes of MAI–CR3d 320.07, "consent" is defined as:

Consent or lack of consent may be expressed or implied. Assent does not constitute consent if: (a) It is given by a person who lacks the mental capacity to authorize the conduct charged to constitute the offense and such mental incapacity is manifest or known to the actor; or (b) It is given by a person who by reason of youth, mental disease or defect, or intoxication, is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense; or (c) It is induced by force, duress, or deception.

MACI–CR 3d 320.07, Notes on Use 2; MAI–CR 3d 333.0.

■ Prior cases indicate that sexual assault was not considered a lesser included offense of forcible rape in the past. *See State v. Clark,* 747 S.W.2d 197 (Mo.App. E.D.1988); *State v. Berry,* 916 S.W.2d 389 (Mo.App. S.D.1996). It is clear that the previous statutes required proof of different facts to establish the commission of each offense. A crime is a lesser included offense of a greater crime only if it is established by proof of the same or less than all the facts required to establish the commission of the greater offense. *Goff v. State* 70 S.W.3d 607, 610 (Mo.App. S.D. 2002). The prior statute for sexual assault contained a requirement that 1) the sexual intercourse occur between two persons, 2) who were not married, and 3) with a person who was incapacitated or fourteen or fifteen years old. No such requirement concerning incapacity or age was contained in the statute for rape.

The trial court found that "[c]ommon sense would tell you that if a rape occurs by forcible compulsion it is without consent." We agree; however, we cannot read into the current rape statute the element concerning a victim's lack of mental capacity and the defendant's knowledge of that incapacity. We must conclude that when the legislature took out the words "without the person's consent," they did so with a purpose. The definitions concerning "consent" no longer apply to the rape statute and, thus, mental capacity and

---

**12.** Section 565.060 RSMo 1978 defines the offense of assault in the second degree.

**13.** Section 565.070 RSMo 1978 defines the offense of assault in the third degree.

knowledge of mental incapacity were not independent elements of rape. Therefore, sexual assault is not a lesser included offense of rape. Furthermore, we cannot convict Defendant of sexual assault when no evidence was adduced as to Defendant's knowledge of the victim's mental incapacity or that the mental incapacity was "manifest" to Defendant, which is a necessary element of sexual assault. That issue was simply not tried to the trial court. Defendant was not charged with the independent crime of sexual assault, therefore, the judgment of conviction is reversed and case remanded with instructions that the trial court enter a judgment of acquittal and order Defendant discharged.