

# Missouri Court of Appeals
## Southern District
### Division Two

STATE OF MISSOURI,          )
                                      )
      Plaintiff-Respondent,    )
                                      )
vs.                              )        No. SD32767
                                      )
COLBY L. SANDERS,         )        Filed November 25, 2014
                                      )
      Defendant-Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Mark E. Orr, Circuit Judge

### AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH DIRECTIONS

       Colby L. Sanders ("Defendant") appeals his convictions of forcible rape, *see*

section 566.030, forcible sodomy, *see* section 566.060, and first-degree child molestation,

*see* section 566.067.[1] Defendant contends that there was insufficient evidence to support

that he used forcible compulsion in raping and sodomizing his daughter and that the trial

court plainly erred in submitting Instruction No. 5 to the jury because the instruction did

not inform the jurors that they must agree on a specific act of first-degree child

molestation in order to convict Defendant on that count. Finding sufficient evidence

supporting Defendant's use of forcible compulsion in the rape of his daughter and that

Defendant's express statement that he had no objection to Instruction No. 5 constituted a

---

[1] All statutory references are to RSMo Cum.Supp. 2006, unless otherwise indicated.

1

waiver of any alleged instructional error, we affirm Defendant's convictions of forcible rape and first-degree child molestation; finding insufficient evidence supporting Defendant's use of forcible compulsion in sodomizing his daughter, we reverse Defendant's conviction of forcible sodomy and remand for entry of an amended judgment accordingly.

## Factual and Procedural Background

Taken in the light most favorable to the verdict, *see* **State v. Callen**, 97 S.W.3d 105, 109 (Mo.App. 2002), the following evidence was adduced at trial.

B.S. was born in August 1999. Defendant, B.S.'s stepfather, touched B.S.'s vaginal area on several occasions between August and September 2008. Once, when B.S. was on the couch playing video games, Defendant came into the room and "started snuggling [her] and rubbing his hands all over [her] body." At that time, Defendant put his hands over B.S.'s jeans but underneath B.S.'s shirt. Another time, when B.S. was in Defendant's home office, Defendant sat B.S. on his lap, pulled down her jeans, pulled off her underwear, and unzipped his pants. Defendant pushed B.S. back and forth on his lap several times, rubbing her vaginal area over his penis, until he ejaculated.

On another occasion, B.S. was lying on the couch in the living room when Defendant lay down behind her. He unzipped both their pants, pulled B.S.'s pants down, and rubbed his penis against B.S.'s "butt." When B.S. told Defendant to stop, he replied that "[i]t would be okay because it was only going to be a little while longer." This time, Defendant stopped before he ejaculated. This scenario occurred several times.

On yet another occasion, B.S. was again on the couch in the living room. Defendant entered the room and sat next to her, rubbing her neck. He then unzipped his pants and pulled out his penis. Defendant grabbed B.S.'s hand, "wrapped" it around his

2

penis, and moved it in an "up-and-down motion" until he ejaculated. Defendant's semen got onto B.S.'s finger, and some fell on the floor.

Finally, one day when B.S. was home sick from school, she and Defendant were sleeping on the waterbed in B.S.'s mother's room. B.S. and Defendant were the only people home. B.S. awoke to Defendant rubbing her chest and stomach; Defendant then stuck his hands in her pants between her legs and rubbed her thigh. Defendant moved his hand up to B.S.'s vaginal area and pulled down her pants, removing his own robe and boxers. Defendant then removed B.S.'s underwear and got on top of her, placing his hands on the bed by her shoulders for support. Defendant stuck his penis between B.S.'s legs and moved it up to her vaginal area, rubbing it up and down until he ejaculated. B.S. told Defendant to stop, but he just answered that it would be over soon.

B.S.'s older sister, A.S., was born in October 1995. In November 2008, when A.S. was using the computer in her mother's room, Defendant came in and sat down next to her. Defendant stuck his hand down A.S.'s shirt and underneath her bra, fondling her breasts. He then stuck his hand down her pants and underneath her underwear, telling A.S. that she "should probably shave." Defendant stopped when someone came into the room.

Defendant's daughter, L.S., was born in July 1991. L.S. suffers from bipolar disorder and has been on various medications for bipolar disorder for some time; L.S. had experienced thoughts of suicide in the past.[2] Although she lived with her mother, L.S. visited Defendant in his home in November 2008. L.S. and Defendant were in Defendant's bedroom talking; L.S.'s zipper on her pants was undone, and she was not

---

[2] Having thoughts of suicide was the only evidence presented as to how L.S.'s mental illness or the medication she was taking for this illness affected her.

wearing underwear because she did not have any that were clean.  Defendant put his finger inside L.S.'s vagina touching her clitoris; L.S. pulled his hand away and zipped up her pants.  She then sat down on the bed.  Defendant approached her, "scooted [her] down[,]" unzipped her pants, pulled them down, and put his penis in her vagina.  Defendant also fondled her breasts underneath her bra.  L.S. was thinking, "Stop, quick; it will be over in a little bit[,]" but it happened too fast for her to say anything to Defendant.

In December 2008, Nicole Schrock of the Missouri Children's Division received a hotline report regarding sexual abuse of A.S.  After visiting Defendant's home and speaking with A.S., B.S., their mother, another child, and the maternal grandparents, Schrock scheduled interviews for A.S. and B.S. at the Child Advocacy Center in Springfield.  After the interviews, which Schrock observed from behind a two-way mirror, Schrock contacted the Christian County Juvenile Office and the Jasper County Department of Social Services, asking them to make contact with Defendant's two biological daughters.

Defendant was ultimately charged with eight offenses in separate counts:  first-degree child molestation of B.S. for touching his penis to her leg (Count I); first-degree statutory sodomy of B.S. for touching his penis to her mouth (Count II); first-degree statutory sodomy of B.S. for touching his penis to her hand (Count III); first-degree statutory rape of B.S. for penetrating her vagina with his penis (Count IV); first-degree child molestation of A.S. for touching her genitals with his hand (Count V); first-degree statutory sodomy of A.S. for touching her genitals with his hand (Count VI); forcible rape of L.S. for penetrating her vagina with his penis using forcible compulsion (Count VII);

4

and forcible sodomy of L.S. for inserting his finger into her vagina using forcible compulsion (Count VIII).

The jury found Defendant guilty of two counts of first-degree child molestation, two counts of first-degree statutory sodomy, forcible rape, and forcible sodomy—Counts I, III, V, VI, VII, and VIII—and acquitted him of one count each of statutory rape and statutory sodomy of B.S.—Counts II and IV. Defendant waived jury sentencing, and the trial court sentenced Defendant to fifteen years' imprisonment on each count of first-degree child molestation (Counts I and V) and forty years' imprisonment on each count of first-degree statutory sodomy, forcible rape, and forcible sodomy (Counts III, VI, VII and VIII), with the sentences to be served concurrently. This appeal followed.

## Discussion

Defendant presents three issues for our review on appeal challenging his convictions on Counts I, VII and VIII. For ease of analysis, we address his points out of order.

### *Alleged Instructional Error Waived*

In his third point relied on, Defendant claims that the trial court plainly erred in submitting Instruction No. 5 to the jury because the instruction did not specify that the jurors must agree on a single, specific instance of first-degree child molestation of B.S. in order to convict Defendant on Count I. Defendant argues that, because the State presented evidence of three separate and distinct occasions when Defendant touched B.S. with his genitals, such an omission was prejudicial in that jurors could have found him guilty on Count I based upon three different acts. We find that Defendant waived any such argument by trial counsel's express representation and statement to the trial court that Defendant had no objection to Instruction No. 5, and we decline plain error review.

5

Rule 28.03[3] provides, in pertinent part:

> Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. . . . The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

Here, not only did Defendant fail to assert any objection, as required by Rule 28.03, Defendant expressly represented and stated to the trial court that he had no objection to Instruction No. 5. He has thus waived appellate review of any related instructional error. *See* ***State v. Wright***, 30 S.W.3d 906, 911 (Mo.App. 2000). Furthermore, although Rule 30.20 grants us the discretion to review otherwise-unpreserved issues for plain error, "[a] statement that counsel has no objection, as opposed to a failure to object, waives plain error review because the response precludes a finding that the failure to object was negligent or inadvertent." ***Wright***, 30 S.W.3d at 911. In addition, such a waiver notwithstanding, we find plain error review inappropriate because Instruction No. 5 tracked verbatim MAI-CR 3d 320.17, and the "[u]se of an approved instruction cannot, by definition, be deemed plain error." ***State v. Goodwin***, 891 S.W.2d 435, 438 (Mo.App. 1994). As such, we decline to review Defendant's claim on this issue for plain error, and his third point is denied.

### *Sufficiency of the Evidence Claims*

In his first two points relied on, Defendant claims there was insufficient evidence supporting his use of forcible compulsion under Counts VII and VIII, the charges of forcible rape and forcible sodomy of L.S., respectively. We disagree as to the rape charge, determining that sufficient evidence supports the jury's finding that Defendant

---

[3] Rule references are to Missouri Court Rules (2014).

used forcible compulsion in raping L.S., but agree that the evidence presented to the jury was insufficient to support the jury's finding that he used forcible compulsion in sodomizing L.S.

We are limited in our review of a claim of insufficient evidence to determining "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009). In doing so, we "give[] great deference to the trier of fact." *Id.* This means that we "accept[] as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence[, and we] disregard[] all evidence and inferences to the contrary." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). "The credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury, and the appellate court will not interfere with the jury's role of weighing the credibility of witnesses." *State v. Coleman*, 263 S.W.3d 680, 683 (Mo.App. 2008).

Defendant was charged in Counts VII and VIII with forcible rape and forcible sodomy, both having the element of forcible compulsion. "Forcible compulsion" is defined as "[p]hysical force that overcomes reasonable resistance" or "[a] threat, express or implied, that places a person in reasonable fear of death, serious physical injury[,] or kidnapping of such person or another person[.]" Section 556.061(12). Here, the State's allegations against Defendant and the evidence in the record concerned only the former— physical force that overcomes reasonable resistance. Such force "must be calculated to overcome the victim's resistance and complete" the charged sexual act. *State v. Niederstadt*, 66 S.W.3d 12, 15 (Mo. banc 2002).

7

In determining whether the force used in a specific case is sufficient to overcome reasonable resistance, we look not "to any single fact but to the totality of the circumstances." *Id.* In discerning the circumstances of a particular case, we look to "whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress." *Id.*

In this case, there was sufficient evidence to support Defendant's use of forcible compulsion in the rape of L.S. The evidence showed Defendant, as L.S.'s father, to be significantly older than L.S., who was seventeen at the time of the rape. It also showed that the rape took place in Defendant's bedroom in Defendant's home, a place relatively unfamiliar to L.S. Defendant and L.S. were alone in the home, thus any attempt to call for help would have been futile; notably, "the law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile[.]" *Id.* As her father, Defendant was in a position of authority over L.S. in his home, and he gained physical control of her by moving her around on the bed, unzipping her pants, and then removing them. Defendant was also aware of L.S.'s mental illness, namely her bipolar disorder and suicidal tendencies. Finally, L.S. expressed to Defendant physical resistance following his initial digital penetration of her vagina to touch her clitoris by removing his hand from her and zipping up her pants. In their totality, these circumstances establish a scenario from which a jury could reasonably infer and find that Defendant took advantage of his dominion and authority in his bedroom in his home to

8

rape his mentally ill daughter, using such forcible compulsion as was necessary to overcome her reasonable resistance as expressed by her to his initial sexual advance.

A similar analysis of the circumstances surrounding the sodomy charge, however, dictates a different conclusion. The forcible sodomy charge was based upon Defendant's initial sexual contact of putting his finger into L.S.'s unzipped pants and putting his finger in her exposed vagina to touch her clitoris. Unlike the rape, at the time of this act there was no evidence presented of either physical manipulation of L.S. by Defendant to accomplish the act or any resistance on the part of L.S. to the sexual contact by Defendant. The only circumstances in evidence arguably supporting a finding of forcible compulsion on the sodomy charge is the age difference between Defendant and L.S., Defendant's paternal authority position over L.S., the location of the act in Defendant's home, and the existence of L.S.'s mental illness. In analyzing the forcible rape conviction, these circumstances buttress and support the inference of forcible compulsion—physical force that overcomes reasonable resistance—when coupled with L.S.'s expressed physical resistance to further sexual contact *after* the sodomy and Defendant's physical manipulation of her to accomplish the rape. Standing alone in the sodomy analysis, however, these circumstances fail to reasonably support an inference of forcible compulsion—physical force that overcomes reasonable resistance—in accomplishing the sodomy act. At best, this set of circumstances merely support an inference that Defendant placed his finger in his mentally ill daughter's exposed vagina without her consent, as demonstrated by her subsequent act of pushing his hand away and zipping her pants. To find otherwise, would essentially collapse the "reasonable resistance" component of the definition of forcible compulsion into the lack-of-consent

9

element of deviate sexual assault under section 566.070.[4]  While there was sufficient evidence presented to reasonably support a jury's inference and determination that Defendant sodomized his daughter without her consent, the evidence presented at trial was not sufficient to reasonably support the jury's finding that he did so by the use of forcible compulsion.

Our analysis in this case is consistent with that of the court in *State v. Gomez*, 92 S.W.3d 253 (Mo.App. 2002), and *State v. Campbell*, 143 S.W.3d 695 (Mo.App. 2004), both of which Defendant cites in support of his argument.  In *Gomez*, the defendant raped a nineteen-year-old girl with a diminished mental capacity, i.e., she was the functional equivalent of a four- to eight-year-old girl.  There was no evidence of physical force or of threats either express or implied, but the defendant was nevertheless convicted by the trial court, which found an inference of physical force based upon the victim's mental capacity and the disparity in physical size between the defendant and his victim.  *Id.* at 255.  This court reversed, finding such an inference inappropriate and that the evidence was insufficient to support a finding of forcible compulsion.  *Id.* at 257.  In *Campbell*, the defendant's convictions of forcible rape and forcible sodomy were upheld where the defendant raped and sodomized his twelve-year-old daughter after previously having sexually assaulted her and threatening her with violence if she did not acquiesce.  143

---

[4] Section 566.060.1 provides, in relevant part, that "[a] person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion."  Section 566.070.1 provides that "[a] person commits the crime of deviate sexual assault if he has deviate sexual intercourse with another person knowing that he does so without that person's consent."  Section 566.010(1) defines "Deviate sexual intercourse" as:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim[.]

S.W.3d at 699. Although the facts in **Gomez** and **Campbell** differ somewhat from those in the instant case, many of the facts in each case overlap, and they constitute two distinct points in the spectrum of rape and sodomy offenses; both cases require something extra, in the form of physical force and resistance or fear, in order to differentiate a lack-of-consent offense from a use-of-forcible compulsion offense.

Accordingly, we deny Defendant's first point relied on but grant his second.

## Decision

The trial court's judgment is affirmed as to Counts I and VII and reversed as to Count VIII.[5] The cause is remanded for entry of an amended judgment accordingly.

GARY W. LYNCH, J. - Opinion author

NANCY STEFFEN RAHMEYER, J. - concurs in part; dissents in part in separate opinion

DON E. BURRELL, J. - concurs

---

[5] Although not briefed by the parties, we considered whether the record might support a conviction in Count VIII of the class C felony of deviate sexual assault under section 566.070, which prohibits a person from having deviate sexual intercourse "with another person knowing that he does so without that person's consent," but having no element involving "use of forcible compulsion," as in forcible sodomy under section 566.060. *See* footnote 4, *supra*. Case law, however, seems to foreclose this option. *See* **Gomez**, 92 S.W.3d at 258-59.



# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD32767
)
COLBY L. SANDERS, ) **Filed: November 25, 2014**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Mark E. Orr, Circuit Judge

## DISSENT

I respectfully dissent from the majority opinion that there is not sufficient evidence to support the jury's finding that Defendant used forcible compulsion in sodomizing L.S. I do so by giving great deference to the trier of fact, who saw and heard from both the victim and Defendant. Although this may be a close question, the issue raised was whether Defendant used "forcible compulsion," which is described as "[p]hysical force that overcomes reasonable resistance." Section 556.061(12), RSMo Cum.Supp. 2006. To determine whether the force used is sufficient to overcome reasonable resistance, we look not to any single fact but to the totality of the circumstances. It seems to me that the very facts that support forcible rape also support

forcible sodomy: the ages of the victim and the accused; the fact that this was in Father's home; the fact that this was the victim's biological father, the person who had authority over and control of the victim; and the fact that the victim was using seven prescribed medications for bipolar disorder and had suicidal tendencies. In my view, these factors, combined with the jury's assessment of the victim and Defendant, provide substantial evidence to support a conviction for statutory sodomy. I do not believe it was necessary that any additional physical force is necessary to support the sodomy charge; however, I believe it is a reasonable inference that Defendant did physically force his daughter to commit the sodomy. Her zipper may have been undone but that does not mean he did not physically force her to commit the sodomy. It is interesting to note that, in this case, Father was accused and convicted of abusing his stepdaughters as well. It is a reasonable inference from the evidence that the victim may have known what had happened to her sisters, was intimidated by that behavior, and further resistance would not have been reasonable.

Nancy Steffen Rahmeyer, J. - Dissenting Opinion Author