

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,       )
                         )
    Plaintiff-Respondent,  )
                         )
v.                       )       No. SD35347
                         )
RONALD MCLEMORE,         )       **Filed: May 14, 2019**
                         )
    Defendant-Appellant.   )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Eric D. Eighmy

**AFFIRMED**

Ronald McLemore ("Defendant") appeals his conviction, after a jury trial, for attempted forcible sodomy in the first degree. *See* section 566.060.[1] Defendant's sole point claims there was insufficient evidence supporting the necessary element that he used forcible compulsion in attempting to sodomize his victim. We disagree and affirm his conviction.

### Applicable Law and Standard of Review

"A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person . . . by the use of forcible compulsion."

---

[1] Unless otherwise noted, all statutory references are to RSMo Cum. Supp. 2013.

1

Section 566.060.1. **"Deviate sexual intercourse"** includes "any act involving the genitals

of one person and the hand . . . of another person[.]" Section 566.010(1). **"Forcible**

**compulsion"** constitutes "[p]hysical force that overcomes reasonable resistance[.] Section

556.061(12)(a).[2]

> Under Section 564.011.1 RSMo ([Cum. Supp. 2013]), a person is
> guilty of attempt when, "with the purpose of committing the offense, he
> does any act which is a substantial step towards the commission of the
> offense. A 'substantial step' is conduct which is strongly corroborative of
> the firmness of the actor's purpose to complete the commission of the
> offense." Therefore, in order to prove the crime of attempt, the State must
> prove two elements: (1) the defendant's purpose to commit the underlying
> offense, which in this case is forcible sodomy; and (2) conduct which
> constitutes a substantial step toward the commission of the offense. *See
> Finley v. State,* 321 S.W.3d 368, 371 (Mo.App.W.D.2010). Section
> 564.011 does not require an actual and specific attempt to perform each and
> every element of the crime. *Id.* In addition, the defendant's conduct does
> not have to be the ultimate step toward or the last possible act in the
> completion of the crime attempted. *Id.*

***State v. Davis***, 422 S.W.3d 458, 461 (Mo. App. E.D. 2014).

"Our review of a challenge to the sufficiency of the evidence is limited only to a

determination of whether there was sufficient evidence from which a reasonable juror

could have found the defendant guilty beyond a reasonable doubt." ***Id.*** "We accept all

evidence and reasonable inferences therefrom in support of the defendant's guilt as true,

and we disregard all evidence and inferences to the contrary." ***Id.***

### The Evidence

Viewed in the light most favorable to the verdict, ***State v. Sanders***, 449 S.W.3d

812, 814 (Mo. App. S.D. 2014), the evidence adduced at trial was as follows. Defendant

had been dating the grandmother ("grandmother") of Victim 1 and Victim 2 (collectively,

---

[2] **"Forcible compulsion"** also includes "[a] threat, express or implied, that places a person in reasonable fear
of death, serious physical injury or kidnapping of such person or another person[,]" but that definition is not
at issue here. *See* section 556.061(12)(b).

"Victims") for eight years at the time of the conduct charged in this case. Victims are sisters; Victim 1 was between eight and nine at the time of these events, and Victim 2 was between six and seven. Defendant was not working due to having recently undergone heart surgery, and he sometimes babysat Victims at his home when their parents were working and the Boys and Girls Club was closed.

In late December 2015, Victims told their mother that Defendant had engaged in inappropriate sexual behaviors while babysitting them. Specifically, Victim 1 told her mother that Defendant would play with his privates in front of her and Victim 2, and he would talk about animals and other things in order to make Victims look at him while he was touching himself. Victim 1 said that Defendant had once taken hold of her hand and tried to make her touch his genitals, but she had pulled her hand away. In attempting to avoid these types of situations, Victim 1 said "she would go outside or do other things." Defendant told Victims "not to tell because it would be their secret."

Victim 1 underwent a forensic interview at the Child Advocacy Center.[3] During that interview, Victim 1 disclosed that "many times" while her parents were at work, Defendant played with his privates in front of her and Victim 2.[4] Victim 1 asked Defendant to stop many times, but he did not quit. Victim 1 could not say how many times this happened, but she characterized it as "quite a few." Defendant would sometimes be completely naked, and at other times he would be wearing only a robe. The incidents occurred in the home's two living rooms and in the bedroom Defendant shared with grandmother. Sometimes, Defendant would call Victim 1 to his bedroom as she was going to the bathroom, and Victim 1 would try to get away by pretending that she did not hear

[3] Victim 2 also submitted to a forensic interview, but her statements did not include anything related to the charge at issue in this appeal.
[4] Victims have an older sister, but Defendant never engaged in any sexual conduct when she was present.

him or make excuses like her sister needing a glass of water. Victim 1 said she "sometimes" succeeded in remaining in the hallway by the use of these techniques.

Although she did not use the same words, Victim 1's recounting of Defendant's activities included his masturbating to ejaculation in Victims' presence. She also described a time when Defendant was in his bedroom and tried to make Victim 1 touch his penis. Defendant had ahold of her wrist and brought her hand all the way to the hair on his genitals before she "yanked" it away and left. Defendant told Victim 1 not to tell, that it was his, hers, and Victim 2's secret.

Defendant was charged with six felony offenses.[5] The count challenged on appeal ("Count 5"), charged:

> [D]efendant, in violation of Section 566.060, RSMo, committed the felony of attempted sodomy in the first degree . . . in that on or between June 1, 2014 and December 29, 2015 . . . [D]efendant . . . tried to make [Victim 1] touch [D]efendant's penis, and such conduct was a substantial step toward the commission of the crime of forcible sodomy of [Victim 1], and was done for the purpose of committing such forcible sodomy.

The jury convicted Defendant of four of the six felonies, including Count 5. The trial court imposed a 10-year sentence on Count 5, and this appeal timely followed.

## Analysis

Defendant does not contend that he did not attempt to make sexual contact with Victim 1. His sole challenge is to the sufficiency of the evidence supporting the jury's finding that he used forcible compulsion in his attempt to engage in deviate sexual intercourse with Victim 1.

Forcible compulsion, defined as "[p]hysical force that overcomes reasonable resistance[,]" "'must be calculated to overcome the victim's resistance and complete' the

---

[5] Defendant does not challenge any of his three other convictions on appeal.

4

charged sexual act." *Sanders*, 449 S.W.3d at 817 (quoting *State v. Niederstadt*, 66 S.W.3d 12, 15 (Mo. banc 2002)).

> In determining whether the force used in a specific case is sufficient to overcome reasonable resistance, we look not "to any single fact but to the totality of the circumstances." [*Niederstadt*, 66 S.W.3d at 15]. In discerning the circumstances of a particular case, we look to "whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress." *Id*.

*Sanders*, 449 S.W.3d at 817.

Here, a reasonable juror could find beyond a reasonable doubt that Defendant used forcible compulsion to attempt to engage in deviate sexual intercourse with Victim 1. Defendant unquestionably used physical force – force applied to the body – when he grabbed Victim's hand and moved it toward his penis. *See State v. Kilmartin*, 904 S.W.2d 370, 374 (Mo. App. W.D. 1995) (citing *Black's Law Dictionary* 1147 (6th ed.1990)). "The critical question here is whether the acts of deviate sexual intercourse were done by use of physical force that 'overcomes reasonable resistance.'" *Niederstadt*, 66 S.W.3d at 15 (quoting section 556.061(12)(a)).

Victim 1 testified that she actually touched the hair above Defendant's penis before she was able to "yank" her hand away. The fact that Victim 1 was successful in resisting Defendant's use of physical force does not relieve Defendant of culpability, as "[t]he force involved need not come after the victim has physically resisted." *Niederstadt*, 66 S.W.3d at 15 (citing *State v. Thiele*, 935 S.W.2d 726, 729 (Mo. App. E.D. 1996)). Defendant contends otherwise based upon an absence of evidence that Victim 1 was afraid of Defendant or that Defendant had ever threatened her. Threats and fear are not a

5

prerequisite to a finding of forcible compulsion; they are just one consideration in an evaluation of the totality of the circumstances. *Sanders*, 449 S.W.3d at 817.

Such other circumstances here were that Defendant was significantly older than Victim 1, who was just 8 years old at the time. Defendant was also her caretaker, and he was thereby in a position of authority over her in the home. The attempted sodomy occurred in Defendant's bedroom while Victim 1's parents were at work. Victim 1 had also been subjected to a series of similar events in Defendant's home, and she had been unable to consistently avoid them. Defendant told Victims not to tell anyone, saying that it was their secret. Victim 1 had avoided Defendant's advances whenever possible, including trying not to look at him while he was doing these things and making excuses to avoid going into his room when he called for her to join him.

Defendant relies on *State v. Daleske*, 866 S.W.2d 476 (Mo. App. W.D. 1993), a case in which the Western District concluded that the evidence of forcible compulsion was insufficient. However, as other cases have recognized, *Daleske*'s suggestion that "a perpetrator's using his hands to guide a girl's mouth to his penis [is] not physical force" is *dicta*, and its holding did not involve the same definition of forcible compulsion at issue here. *Kilmartin*, 904 S.W.2d at 374 (citing *Daleske*, 866 S.W.2d at 478).

We find *State v. Vandevere*, 175 S.W.3d 107 (Mo. banc 2005), to better fit the law and facts at issue here. In that case, the defendant took a young girl to a hotel room, locked the door, pulled her onto his lap multiple times, and engaged in sexual contact without her consent. *Id.* at 109. Despite the lack of overt threats or express statements of fear by the victim, our high court concluded that sufficient evidence of forcible compulsion was presented. *Id.* at 110.

6

Under the totality of the circumstances present in the instant case, the jury could reasonably find that Defendant exerted the physical force necessary to overcome Victim 1's reasonable resistance in his attempt to complete the act of deviate sexual intercourse that would constitute forcible sodomy in the first degree. Defendant's point is denied, and the judgment of conviction is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. – CONCURS